WILLIAM GIRD, Plaintiff in Error, *v.* STATE OF OREGON, Defendant in Error.

### Benton.

A recognizance to appear at the next term of the District Court for Benton County, taken under the territorial act of December 10th, 1856, entitled " An act to conform the practice of the courts to the act of Congress of August 16, 1858," is good. The sittings therein provided for are District Courts, and the duration of each sitting is a "*term.*"

SUIT was brought in Benton County, by the State against William Gird, upon a recognizance entered into under the

late territorial government, before a justice of the peace of Benton County, on the 6th day of June, A. D. 1858, by said Gird and Moses E. Milner, for the appearance of said Milner at the District Court of Benton County, on the first day of the next term thereof, and answer a charge of an assault with an intent to murder. At the regular term of the District Court, held at Salem, September 7th, 1858, a true bill of indictment was found against said Milner, and at the next "sittings," so called, of the District Court of Benton County, held on the 4th day of October, 1858, the said Milner being called to appear, and failing to do so, the recognizance was forfeited. The defendant below demurred to the complaint, which demurrer was overruled by the court, and judgment rendered for the plaintiff. The plaintiff in error brings suit to reverse that judgment.

*Kelsay & Thayer*, for plaintiff in error.

*G. H. Williams*, for defendant in error.

WAIT, C. J.   From the points raised in this case, it becomes necessary to consider two questions :

1st. Whether the recognizance is such that it justifies a recovery against a surety ; and,

2d. Whether the recognizance could be forfeited at the sittings of the District Court for Benton County.

The plaintiff in error insists, that the District Court of the first judicial district of the territory of Oregon, of which the county of Benton was a part, was held at Salem, in Marion County ; and that the act of Congress of August 16th, 1856, and the act of our own territorial legislature of December 10th, 1856, forbid the holding of a District Court, except at one place in a judicial district; and hence that this recognizance to appear at the District Court for Benton County, especially as against a surety, was void, and that the forfeiture of the recognizance in Benton County was unauthorized.

The act of Congress, we think, did not forbid the holding of territorial courts, for the enforcement of territorial laws, at the expense of the territories.

The reason of the enactment of this law of Congress was, that in one of the territories very heavy expenses had been incurred, attendant upon the holding of District Courts.

Whether intended by Congress or not, a practice had prevailed of holding District Courts, by the United States territorial judges, in all the counties where the wants of the people and territorial enactments required it. Much expense and time would be saved to the people by the holding of courts in their respective counties; and if the United States territorial judges were willing, as ours were, without increase of pay or neglect of United States business, and without any increase of the expense to the United States, to hold District Courts at more than one place in a judicial district, no reason is discovered why Congress should confine the holding of District Courts to one place in the district. We think that Congress, in its act aforesaid, did not prohibit the territorial legislature from providing for, nor the United States territorial judges from, holding courts in the several counties in the territories. We think, also, that a reasonable construction of the act of the territorial legislature, passed December 10th, 1856, entitled an "Act to conform the practice of the courts to the act of Congress of August 16th, 1856," shows that it authorized the holding of District Courts, for the transaction of territorial business, without cost to the United States, in Benton County. This act provides for the holding of a District Court in one place in each judicial district, and for *sittings* in each county, for the trial of issues of fact in cases arising in such counties. It provides that a grand jury be summoned by the marshal from the district, upon a venire issued by the clerk of the District Court; and that indictments shall be deemed at issue, on the plea of not guilty, without arraignment or formal plea, and sent down for trial at the first sittings thereafter. It provides, that every indictment shall state in what county the offence was committed;

and that issues in fact arising thereon should be sent down for trial to that county, and that no territorial prisoner, in actual custody or confinement, shall be conveyed out of the county for the purpose of pleading or receiving sentence. This territorial legislation, then, authorizes the holding of District Courts at one place in a judicial district, where all the United States cases may be disposed of; and also for the holding of *sittings* for all the counties, for the disposal of territorial business. If the word *sittings* had been used where the word *term* occurs in the recognizance sued upon, it would be clear that the recognizance is such as is authorized by law; and we think that the word *sittings*, as used by the territorial legislature, may be regarded as signifying "term." The district judges, in their *sittings* in the several counties, for the trial of issues of fact, attended as they were by clerks, sheriffs, juries, and all the paraphernalia of courts of record, were holding District Courts, and the duration of each of those sittings was a *term* of court.

Milner could not have been tried for an assault with intent to murder, as charged against him, except in Benton County, and in a District Court. We cannot suppose that the legislature, while assuming to provide for the punishment of territorial offences, intended to suspend all trials and punishments for those offences; yet, if it be true that District Courts could not be held but at one place in a district, and that such courts were lawfully held at Salem, in Marion County; and if it be also true that territorial offences could be tried only at the sittings, and in the counties where the offences were committed, then, it necessarily follows that the legislature, while assuming to provide trial and punishment for offences, did, whether intended or not, suspend the trial and punishment of all the higher territorial offences committed in those counties. We think that nothing of the kind was intended or effected. Our statute provides, that no action, brought on a recognizance, "shall be barred or defeated, nor shall judgment be arrested thereon, by reason of any neglect or omission to note or record the default of the principal or surety, at the term

when such default shall happen ; nor by reason of any such defect in the form of the recognizance, if it sufficiently appear from the tenor thereof at what court the party or witness was bound to appear, and that the court, or magistrate before whom it was taken, was authorized by law to require and take such recognizance." The only place where Milner could be tried was in Benton County ; the only tribunal before which he could be tried was a District Court; the recognizance required his appearance " at the District Court of Benton County, on the first day of the next term thereof." The recognizance binds the plaintiff in error as surety thereon, and the forfeiture thereof was authorized by law.

The judgment of the court below is affirmed.