## BAKER *vs.* THE STATE OF GEORGIA.

A court is not dissolved by a mere recess or necessary adjournment from one day to the next, and misbehavior affecting public justice, in the court-room and in the immediate presence of the judge, whilst he is attending there to resume business when the hour of recess expires, is misbehavior in presence of the court, and may be punished summarily as a contempt of court; especially if the misbehavior is by a suitor who has called attention to a pending case, and is discussing it in presence of some of the jurors who may have to try it.

May 15, 1889.

Courts. Contempt. Before Judge NEEL. City court of Cartersville. September term, 1888.

The rule against Baker was as follows : It appearing to the court that the case of Graham & Graham *vs.*

Thos. H. Baker, pending in said court (the city court of Cartersville) was subject to be called on the morning of the 14th of September, 1888, for trial; and that just before the meeting of the court, and in the courtroom, said Baker was discussing, in the presence of the court and jurors, before whom the cause would be tried, if tried, the said cause and the plaintiffs thereto, greatly to the prejudice of plaintiffs and their cause; and that said Baker was instructed by the court that this was highly improper, and refused to pay attention to the court, and still insisted upon talking as aforesaid; and that the court then informed said Baker that the court had power to hold him for contempt, and said Baker, though thus again admonished, still insisted and would not desist from said discussion : it is ordered that he show cause why he should not be held in contempt.

The court ordered, as a statement of what occurred at the time of the alleged contempt, the following recital to be made a part of the rule: Baker about six or seven minutes before the time appointed for the court to begin business for the day, in the presence and hearing of several of the jurors, asked the court if the case of Graham & Graham *vs.* Baker would be tried that day. The court told him there was a case on trial, and that the court had given Graham leave to go home to a sick child the evening before, but expected him to be in the court that morning, and if his family were well enough, the court would try his case next after the one then on trial. Baker, in a tone of complaint, then said Graham didn't want to try and didn't intend to try that case this court. The court then said to him that the jurors who might have to try the case were sitting around and that it was not proper to refer to the matter as he had done, and further stated that if he could show that Graham's family did not require his attention, the court would force the case to trial. Baker replied that

he could make no counter-showing against a man who looked like he was half asleep or half dead all the time. The court then told him that Graham had obtained leave of absence for the evening before, not on his own account but for sickness in his family. Baker then said Graham didn't want to try because he knew Baker would get judgment against him on a set-off; that he got judgment against him (Baker) in a case tried some days before, and wanted to put this one off until he could collect said judgment out of him (Baker). During the delivery of this last speech, the court again requested Baker to desist from such talk before the jury, stating to him that it was improper; but notwithstanding the court's protest, he continued until he had finished the statement as above given, and then said, "This jury will have to be governed by the evidence in the case as sworn from the witness-stand and not by what I say here. I have got as much right to talk as you have; court is not in session, and you have no more power than I have." The court then arose and said to him, in a peremptory manner, that he must stop that sort of talk or the court would be called to order and Baker called on to show cause why he should not be attached for contempt. Baker then started out of the court-house, saying something as he left which the court did not understand. All this occurred about from five to seven minutes before the exact time court was to begin business, to which time the court had taken a recess on suspending business the evening before. Graham was representing his own case, and neither he nor his son, who was his partner, was present.

Baker demurred to the rule on the ground that there were no such allegations of fact therein as to require him to answer, or as to make against him a case of contempt or a case to justify this proceeding against him.

As to the amendment to the rule above set forth, he says that the charges and facts therein alleged are true. But in explanation of them, he says that he knew he would be wholly unable to make any counter-showing to Graham & Graham's motion for a continuance, mentioned in said rule, because he knew the facts upon which said motion was predicated were susceptible of easy proof, and he knew that Graham & Graham would continue the case because E. D. Graham, the senior member of the firm, had said in his presence, that he intended to continue it, and for this reason respondent knew that the jurors mentioned would not be charged with the trial of the case. He disclaims having any object or purpose to prejudice the case of plaintiffs, or of being in either actual or constructive contempt of the judge or the court, if, under the circumstances, the judge could be considered a court. He says he came to the court-house to learn if the leave of absence, granted to Graham the evening before on account of sickness in his family, had been extended and the case continued, as it afterwards was.

Baker was adjudged guilty and sentenced to pay a fine of $25.00 or be imprisoned two days.

To this judgment he excepted.

BAKER & HEYWARD, for plaintiff in error.

T. W. H. HARRIS, solicitor, and T. W. AKIN, for the State.

BLECKLEY, Chief Justice.

The official report of the facts is prefixed to this opinion. The constitution of the State provides that the power of the courts to punish for contempts shall be limited by legislative acts. This provision has been

in every constitution which the State has adopted since
that of 1861, and was in that also.    The statute on the
subject (code, §4711) is similar to the act of Congress
passed in 1831.    It declares that "The power of the
several courts of law and equity in this State to issue
attachments and inflict summary punishments for con-
tempts of court, shall not extend to any cases except
the misbehavior of any person or persons in the pres-
ence of the said courts, or so near thereto as to obstruct
the administration of justice, the misbehavior of any
of the officers of said courts in their official transac-
tions, and the disobedience or resistance by any officer
of said courts, party, juror, witness or other person or
persons, to any lawful writ, process, order, rule, decree
or command of the said courts." The conduct imputed
to Dr. Baker as a contempt of the city court of Car-
tersville, took place in the court-room, during the time
appropriated to the regular sitting of the court, at Sep-
tember term, 1888, but in the recess of the court for
necessary rest and refreshment, business having been
suspended the previous afternoon or evening, and the
time appointed by the judge for resuming business in
the morning not having arrived by six or seven min-
utes.    The matter of time will, perhaps, be put in the
truest light by saying that the previous day's work
having been concluded, the court adjourned over to a
stated hour next morning, and the misbehavior occurred
from five to seven minutes before the recess expired.
The judge had arrived and was in attendance for the
purpose of resuming and proceeding with judicial busi-
ness, part of which was to conclude an unfinished trial.
Some of the jurors who had been empanelled for the
week were also present.    Dr. Baker, himself a suitor
in the court, was there to inquire about or look after
his case.    The place was the temple of justice, the time

was term-time, and the business in contemplation by judge, jurors and party was court business.

Dr. Baker then and there entered upon the subject of his case, and insisted on discussing it, or making remarks about it, to the judge and in the presence and hearing of the jurors. What right did he have to do this if the court was not in session? And what right did he have to do it in an improper manner if it was in session? It was urged in argument before us that he was merely complaining to the judge, and in so doing was in the exercise of a legal right. But what law confers on a suitor the right to converse about his case with the judge out of court? Are the State's judges to be questioned by suitors about their cases, and listen to complaints elsewhere than in court? We think not. The office of judge would be intolerable to the holder and degrading to the State, were the incumbent subjected by law to personal and private approach, questioning and harassment at the will of anxious and discontented suitors. The only place for intercourse with a judge touching business pending in court is the place where the court sits, and the only time for it is during the sitting. And we think that whenever a judge of the city court is in the court-room during term, and a suitor there calls upon him to deal in any manner with, or answer questions concerning a pending case, the court is in session respecting that case, to the extent at least of keeping the suitor in order in discussing it or making remarks about it, and that any misbehavior of the party then and there occurring takes place in the presence of the court, within the spirit and meaning of the statute above recited. Moreover, it is matter of necessity that the court shall be deemed in session throughout the term for the purpose of keeping order and maintaining decorum in the halls of justice. The orderly assembling of the court for the transaction of

business after each temporary recess would otherwise be impracticable. If the judge had to scramble with a mob of suitors, or others, to reach the bench every morning, and then could punish none of them for the indignity which they had offered the law and the public authority, because he had not succeeded in formally opening the court for the day's business before he was insulted, he would soon become powerless to administer justice. Of what avail would be the power of protecting the court against contempt after the judge actually seated himself on the bench, if while attending in the court-room for the purpose of so seating himself he could not command order and enforce it by summary punishment? To the end that there may be a court held at all, it is necessary that the judge shall have the sanctity of the law's majesty about him whilst he waits officially in the temple of justice, both before and after each daily session. The court is not dissolved by mere recess; and misbehavior affecting public justice, in the court-house and in the immediate presence of the judge, especially by a suitor, is misbehavior in presence of the court, and may be punished summarily as a contempt of court. In the State *vs.* Garland, 25 La. An. 532, an attorney who used abusive language towards a member of the court and committed an assault upon his person during a recess, and in the court-room, under the pretext of resenting what he had said or done when on the bench, was adjudged guilty of a contempt of court, and punished accordingly. The report in that case states that the court had not adjourned, and in the present case it is not expressly declared in the record that the court had adjourned the previous evening or afternoon, but we take it for granted that it had done so, as that is the usual course of business. We think, however, that necessary adjournments from day to day are but recesses in the sittings, and that when the judge returns to the

court-room to resume business, the court at once has a "presence," and that disorder then and there committed affecting the public justice or business of the court, is misbehavior in presence of the court. This precise question is not distinctly determined in the authorities which we have examined, and we have looked into very many referred to by Rap. on Contempts; Am. and Eng. Ency. of Law, vol. 3, p. 777; 15 Cent. L. J. 42; 12 Am. Dec. 178, notes to Clark *vs.* The People, etc., etc. The city court of Cartersville, by its organic law, (acts of 1884–5, p. 487,) has the same power to punish contempts as the superior court of the State. The punishment inflicted was very moderate, being a fine of $25, with the alternative of imprisonment two days in the event of non-payment. That the misbehavior merited this measure of punishment there can be no doubt. The complaining suitor when warned that he was out of order persisted in discussing his case, and closed by defying the judge, saying to him, "I have got as much right to talk as you have; court is not in session, and you have no more power than I have." He needed to be taught his true position as a suitor at the bar of public justice, and as he would not listen to admonition and remonstrance, the court instructed him in the proper manner.

Judgment affirmed.