THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JAMES W. HIGGINS and Others, Defendants.

In the Matter of Proceedings to Punish ALFRED S. WARNER for Criminal Contempt of Court.

Supreme Court, Extraordinary Special and Trial Term, Erie County, December 16, 1939.

*Frank G. Raichle, Special Assistant District Attorney,* for the plaintiff.

*Walter F. Hofheins,* for the alleged contemnor.

Conway, J. The alleged contemnor, a deputy sheriff of the county of Erie, is charged with criminal contempts of court. Generally it may be said that he is charged with two criminal contempts. *First,* that while a deputy sheriff and assigned to guard the jury in a criminal case he perpetrated an act of sexual intercourse with a woman juror. *Second,* that under similar circumstances he secretly purchased liquor for jurors, and himself became drunk. He is charged under subdivision 1 of section 750 of the Judiciary Law. In so far as applicable that section reads as follows:

" § 750. Power of courts of record to punish for criminal contempts. A court of record has power to punish for a criminal contempt, a person guilty of either of the following acts, and no others:

1. Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority."

The first question to be determined is whether the acts charged, if proved, would constitute criminal contempt of court within the subdivision of section 750 of the Judiciary Law quoted above. To determine this we shall divide the matter to be discussed as follows:

I. General governing principle: Francis Bacon in his essay " Of Judicature " (No. LVI) says: " The place of justice is an hallowed place; and therefore not only the bench, but the foot-pace and precincts and purprise, thereof, ought to be preserved without scandal and corruption."

II. There is no question but that the two acts complained of would constitute disorderly, contemptuous and insolent behavior and such as would directly tend to impair the respect due to the authority of the court, if committed under the eye of the court.

III. What constitutes a court? In *People ex rel. Choate* v. *Barrett* (9 N. Y. Supp. 322) it was said: " A court has been well defined to be ' an organized body, with defined powers, meeting at certain times and places for the hearing and decision of causes and other matters brought before it, and aided in this, its proper business, by its proper officers, viz., attorneys and counsel to present and manage the business, clerks to record and attest its acts and decisions, and ministerial officers to execute its commands and secure due order in its proceedings.' Burrill, Law Dict. Lord Coke describes it to be ' a place where justice is judicially administered. Referring to this definition, Wait, Law & Pr. 221, says that the term ' place ' must be understood figuratively, for a court is properly composed of persons consisting of the judge or judges, and other proper officers, united together in a *civil organization*, and invested by law with the requisite functions for the administration of justice. This is a correct view of the subject. The court is clearly an organization invested by law with certain functions for the administration of justice. A contempt committed in the immediate view and presence of any constituent part of that organization, during the sitting of the court, and tending to interrupt the proceedings of such constituent part, is a contempt in the immediate view and presence of the court." (Italics supplied.)

The first sentence quoted was approved recently in *Matter of Rudd* v. *Hazard* (266 N. Y. 302, at p. 306).

IV. What constitutes the immediate view and presence of the court? Under the above-quoted definition of " court," a jury is a constituent part of the court and any contemptuous behavior committed within its sight or hearing becomes behavior committed within the immediate view and presence of the court. This was directly decided in the case of *People ex rel. Choate* v. *Barrett* (*supra;* affd., 56 Hun, 351; affd., 121 N. Y. 678). There a newspaper man concealed himself in the jury room so as to report the deliberations for his paper. The General Term of the Supreme Court, by the presiding justice (56 Hun, p. 352), said:

" The judge is not the court, the court room is not the court; the jury room is not the court; nor is the petit jury the court. But the court consists of all of these combined; and wherever any constituent part of the court is engaged in the prosecution of the business of the court according to law, there the court is present. * * * It seems to us to be clear that any disorderly, contempt-

uous or insolent behavior committed in the presence of any one of the constituent parts of the court while engaged in the business devolved upon it by law must be a contempt committed in the immediate view and presence of the court. If the presence of the judge is essential to the commission of a contempt, we can see no reason why the presence of the jury is not equally indispensable, because each are necessary constituent parts of the court, and each have functions which may in the one case, and must in the other, be performed without the presence of both.

" It would seem that the provisions of law regulating criminal contempts were intended to protect the court during the whole, and each and every part, of its sittings from disorderly, contemptuous or insolent behavior."

A comparable situation was presented in the leading case of *Savin* (131 U. S. 267, 276–278), where it was said:

" Flores, we have seen, was in attendance upon the court in obedience to a subpœna commanding him to appear as a witness in behalf of one of the parties to a case then being tried. While he was so in attendance, and when in the jury-room, temporarily used as a witness-room, the appellant endeavored to deter him from testifying in favor of the government in whose behalf he had been summoned; and, on the same occasion, and while the witness was in the hallway of the court-room, the appellant offered him money not to testify against Goujon, the defendant in that case. Was not this such misbehavior upon the part of the appellant as made him liable, under § 725, to fine or imprisonment, at the discretion of the court? This question cannot reasonably receive any other than an affirmative answer. The jury-room and hallway, where the misbehavior occurred, were parts of the place in which the court was required by law to hold its sessions. It was held in *Heard* v. *Pierce*, 8 Cush. 338, 341, that ' the grand jury, like the petit jury, is an appendage of the court, acting under the authority of the court, and the witnesses summoned before them are amenable to the court, precisely as the witnesses testifying before the petit jury are amenable to the court.' * * * We are of opinion that, within the meaning of the statute the court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court. It is true that the mode of proceeding for contempt is not the same in every case of such misbehavior. Where the contempt is committed directly under the eye or within the view of the court, it may proceed ' upon its own knowledge of the facts, and punish the offender, without further proof, and without issue or trial in any

form.'  *Ex parte Terry*, 128 U. S. 289, 309; whereas, in cases of misbehavior of which the judge cannot have such personal knowledge, and is informed thereof only by the confession of the party, or by the testimony under oath of others, the proper practice is, by rule or other process, to require the offender to appear and show cause why he should not be punished.  4 Bl. Com. 286.  But this difference in procedure does not affect the question as to whether particular acts do not, within the meaning of the statute, constitute misbehavior in the presence of the court.  If, while Flores was in the court-room, waiting to be called as a witness, the appellant had attempted to deter him from testifying on behalf of the government, or had there offered him money not to testify against Goujon, it could not be doubted that he would have been guilty of misbehavior in the presence of the court, although the judge might not have been personally cognizant at the time of what occurred.  But if such attempt and offer occurred in the hallway just outside of the court-room, or in the witness-room, where Flores was waiting, in obedience to the subpœna served upon him, or pursuant to the order of the court, to be called into the court-room as a witness, must it be said that such misbehavior was not in the presence of the court?  Clearly not.

"  We are of the opinion that the conduct of the appellant, as described in the final order of the District Court, was misbehavior in its presence, for which he was subject to be punished without indictment, by fine or imprisonment, at its discretion, as provided in § 725 of the Revised Statutes.  And this view renders it unnecessary to consider whether, as argued, the words ' so near thereto as to obstruct the administration of justice ' refer only to cases of misbehavior, outside of the court-room, or in the vicinity of the court building, causing such open or violent disturbance of the quiet and order of the court, while in session, as to actually interrupt the transaction of its business."

A statement exactly applicable here was made in the recent case of *Matter of Kelly* (365 Ill. 174, 178, 179, 180; 6 N. E. [2d] 113):

"  To reverse the judgment of the Appellate Court and the order of the probate court Waitches contends that an indirect contempt was charged in the petition upon which the proceeding originated, and that, in consequence, he should have been discharged upon his oral answer denying the charges against him.  The contention that the contempt was indirect cannot be sustained.  Conduct in the presence of the court which tends to embarrass or obstruct the court in the administration of justice, or which tends to bring the administration of the law into disrespect, constitutes a direct contempt and is punishable as such.  (*People* v. *Sherwin*, 334 Ill. 609;

*People* v. *Cochrane*, 307 id. 126; *People* v. *Gard*, 259 id. 238; *Dahnke* v. *People*, 168 id. 102; *Stuart* v. *People*, 3 Scam. 395.) Upon the commission of a direct contempt in open court it is competent for the judge to proceed upon his personal knowledge of the facts and to punish the offender summarily without entering any rule against him and without hearing any evidence. (*Cooke* v. *United States*, 267 U. S. 517; *Savin, Petitioner*, 131 id. 267; *Ex Parte Terry*, 128 id. 289; *People* v. *Whitlow*, 357 Ill. 34; *Prople* v. *Andalman*, 346 id. 149.) *All direct contempts, however, are not committed in open court in the ocular view of the presiding judge. Misbehavior constituting a contempt committed in any place set apart for the use of any constituent part of the court when it is in session is deemed to have been committed in the presence of the court and if contemptuous is a direct contempt.* (*Savin, Petitioner, supra; People* v. *Whitlow, supra; People* v. *Sheridan*, 349 Ill. 202; *People* v. *Andalman, supra; People* v. *Cochrane, supra.*)

" The order finding Waitches guilty of contempt sets out the facts constituting the offense with sufficient particularity and certainty to show that the court was authorized to make the order attacked. The summary of and the conclusions drawn from the evidence disclose that on March 6, 1935, while the probate court of Cook county was in session, Waitches attempted to perpetrate a fraud upon that court. The only conclusion which can be drawn from the flagrant misbehavior of this defendant is that it was deliberately calculated to impede the orderly administration of justice. His conduct assailed the dignity and authority of the probate court, and it possessed the inherent power to punish an offender for such contempt. (*People* v. *Seymour*, 272 Ill. 295; *People* v. *Wilson*, 64 id. 195; *Stuart* v. *People, supra; Clark* v. *People*, Breese, 340.) Although the contemptuous act of knowingly filing the spurious will and the application for its probate was not committed in the immediate presence of the judge, it did occur in a place set apart for the use of a constituent part of the court. The fraud attempted to be perpetrated was not directed against the clerk of the court, who merely received the document for filing, but against the court itself. Furthermore, the evidence upon which the order of commitment rests shows, and Waitches admitted, that he personally presented the false will to the presiding judge in his court room for the purpose of inducing him to enter orders making that document a part of the records of the probate court on the same day he caused it to be filed in the clerk's office. Apparently the document itself was of such a character that it aroused the court's suspicion, and the investigation which ensued disclosed an attempt to pervert the process of the court. Since

the contempt here occurred in the presence of a necessary constituent part of the court instead of in the immediate presence of the judge, extrinsic evidence to substantiate the charge was essential. Obviously, in such a situation the court itself may endeavor to maintain the purity and integrity of its own judicial process and may resort to extraneous evidence to accomplish that purpose. It necessarily follows that the sworn testimony of the defendant Waitches was not alone sufficient to purge him of the charge of contempt when his guilt was so clearly established by the testimony of other witnesses. Under these circumstances no duty rested upon the court to believe the testimony of Waitches. On the other hand, the judge was fully warranted in rejecting the denial and in refusing to discharge the defendant." (Italics supplied.)

Analogous holdings appear in the following cases: *Sinclair* v. *United States* (279 U. S. 749) (shadowing jurors after adjournment of court for day); *Matter of Creely* (8 Cal. App. 713; 97 P. 766) (shouting at and attempting to influence jury while jury being taken from hotel to jury room during recess in deliberations of jury); *Field* v. *Thornell* (106 Iowa, 7; 75 N. W. 685) (attempting to influence two jurors by showing them newspaper article at newspaper office after adjournment of court for day); *Matter of McCown* (139 N. C. 95; 51 S. E. 957) (assault on judge at his residence in the evening after adjournment of court until further notice from the judge); *Fisher* v. *McDaniel* (9 Wyo. 457; 64 P. 1056) (attempting to bribe witnesses in hallway of and near court house).

The behavior complained of as disorderly, contemptuous or insolent may thus be committed in the immediate view and presence of the court, although that which was said or done could not be heard through the ears or seen through the eyes of the justice presiding. The court may have heard or seen the behavior constructively rather than actually. That is important only, under the authorities, with reference to the notice of the accusation of contempt to be given to the party charged.

Section 751 of the Judiciary Law provides that a contempt " committed in the immediate view and presence of the court, may be punished summarily; when not so committed, the party charged must be notified of the accusation, and have a reasonable time to make a defense."

Our courts have gone further than the language of the statute, and have in practice given notice to the party charged, where the behavior was constructively in the immediate view and presence of the court, *i. e.*, not heard through the ears or seen through the eyes of the justice presiding. If actually in his presence the justice would, of course, be a witness and could write into the mandate

of commitment that which he appreciated through his senses. When only constructively in the immediate view and presence, notice of hearing to the party charged is given. Thus in *Matter of Douglas* v. *Adel* (269 N. Y. 144) it was said (at pp. 146, 147):

" A criminal contempt in the ' immediate view and presence ' of the court may be punished summarily if the acts constituting such contempt are seen or heard by the presiding judge so that he can assert of his own knowledge the facts constituting the contempt in the mandate of commitment. In that case, no proof need be given. The knowledge of the judge takes the place of proof and his recital in the mandate of commitment of the facts upon which the adjudication of contempt is based is sufficient. (*People ex rel. Barnes* v. *Court of Sessions*, 147 N. Y. 290; Judiciary Law, § 755.)

" If, however, the acts constituting the contempt are not committed within his hearing or he does not see them and is, therefore, unable to so state in the mandate of commitment, it is necessary that the offender be given an opportunity to be heard after notice. (Judiciary Law, § 751; *People ex rel. Choate* v. *Barrett*, 56 Hun, 351; affd., 121 N. Y. 678.) "

V. When may it be said that criminal contempt of court was committed " during its sitting? " Duration of the sitting of the court is co-existent at the very least with the duration of the case on trial before it, if not, indeed, with the duration of the entire term of the court which the justice is holding, whether assigned by the Chief Executive or Appellate Division. (Funk & Wagnalls New Standard Dict. [1935], " sitting; " Century Dict. [1913] vol. 9, " sitting; " *Gird* v. *State*, 1 Ore. 308; *Watson* v. *American Nat. Bank*, 13 Ga. App. 599; 79 S. E. 586; *McCarthy* v. *Hugo*, 82 Conn. 262; 73 A. 778 [stealing exhibit from counsel table while court in recess and judge in retiring room]; *Baker* v. *State*, 82 Ga. 776; 9 S. E. 743 [contemptuous behavior in court room in presence of judge and prospective jurors prior to proclamation of opening of court in the morning]; *Field* v. *Thornell*, 106 Iowa 7; 75 N. W. 685 [facts set out above]; *Matter of McCown*, 139 N. C. 95; 51 S. E. 957 [facts set out above]; *State* v. *Buddress*, 63 Wash. 26; 114 P. 879 [quarrel and fight in judge's chambers and in clerk's office during recess].)

Funk & Wagnalls New Standard Dictionary defines " sitting " as: " (3) *Law*, in England, a session or term of a court: usually plural."

The Century Dictionary defines " sitting " as: " 7. In *Eng. law*, the part of the year in which judicial business is transacted."

In *Field* v. *Thornell* (106 Iowa, 7; 75 N. W. 685) the court said (at p. 11): " But it is asserted that the words ' while engaged in

the discharge of a judicial duty ' limit such behavior to the time the court is actually in session, and to acts committed in its presence. If so, then during the intermission of court, while the trial is in progress, the jurors may be approached by friend or foe of the litigant parties, witnesses, and officers denounced or intimidated, and the judge threatened or insulted with impunity. We shall not inquire whether the Legislature may thus deprive the judiciary of powers necessary to enable it to perform the duties conferred by the Constitution, because such an intention will not be imputed to that body. If the statute may be said to be subject to two constructions, that in harmony with the dictates of sound public policy will always be preferred to one inimical to the public good. The court throughout a trial is ' engaged in the discharge of a judicial duty.' The necessities of nature require temporary suspension of the proceedings, for all must eat and sleep. But the judicial duty is not performed until the particular case is disposed of. The purpose of the statute is that during the pendency of specific legal proceedings the court shall be permitted to administer the law according to approved rules and precedents, without molestation or interference."

Similarly it was said in *Baker* v. *State* (82 Ga. 776, 781; 9 S. E. 743): " Moreover, *it is matter of necessity that the court shall be deemed in session throughout the term for the purpose of keeping order and maintaining decorum in the halls of justice.* The orderly assembling of the court for the transaction of business after each temporary recess would otherwise be impracticable. If the judge had to scramble with a mob of suitors, or others, to reach the bench every morning, and then could punish none of them for the indignity which they had offered the law and the public authority, because he had not succeeded in formally opening the court for the day's business before he was insulted, he would soon become powerless to administer justice. Of what avail would be the power of protecting the court against contempt after the judge actually seated himself on the bench, if while attending in the court-room for the purpose of so seating himself he could not command order and enforce it by summary punishment? To the end that there may be a court held at all, it is necessary that the judge shall have the sanctity of the law's majesty about him whilst he waits officially in the temple of justice, both before and after each daily session." (Italics supplied.)

*Matter of Rudd* v. *Hazard* (266 N. Y. 302), relied upon by the attorney for the alleged contemnor on his oral argument, has no application here. In that case the county judge adjourned his term on December 22, 1931, to January 5, 1932, *at his chambers.* While he was outside the State of New York, and on December

28, 1931, the *special county judge* attempted to have a prisoner arraigned before him, a proceeding which could only be had " before the court " at a session of a regular or adjourned stated term. (Code Crim. Proc. § 296.)    So much for the law.

As to the facts, the complaint, as conformed to the proof by the court, consists of the affidavits of Frank G. Raichle, special assistant district attorney of Erie county, James O. Moore, Jr., assistant district attorney of Erie county, Lawrence A. Cronin, a police officer, and an affidavit by George J. Glauber, sworn to on the 11th day of December, 1939.   Upon the hearing the special assistant district attorney did not rely upon his affidavit and that of the others as to the direct examination alone, but, in addition, testified on direct examination himself, and had each of the other affiants do likewise.   In addition he called other witnesses in support of the complaint.

It is conceded by both counsel that there are two criminal contempts charged (p. 128).

As to the secret purchase of liquor for jurors and personally becoming drunk while guarding the jury, there is proof of guilt both by eye-witness and confession, beyond all reasonable doubt. No denial was made of the drunkenness or of the confession thereto by Warner.

The contemnor is adjudged guilty of criminal contempt of court, for which he is fined $250, and in addition sentenced to imprisonment for thirty days in the jail of the county of Erie.   If the fine be not paid the contemnor shall serve thirty days to be computed from the expiration of the definite term of thirty days heretofore given.

As to the act or acts of sexual intercourse with the woman juror, Warner has admitted guilt to the special assistant district attorney of Erie county and to a police officer.   In addition, his conversation before Assistant District Attorney Moore may be considered as an admission when taken in conjunction with the previous conversation testified to by the special assistant district attorney. Warner did not take the stand to deny either the act or acts of intercourse or the confession.   His guilt has been established beyond all reasonable doubt.

For this the contemnor is also adjudged guilty of criminal contempt of court.   The sentence for this criminal contempt is to commence at the conclusion of the sentence for the other criminal contempt of court.   The sentence is that the contemnor Warner be fined $250 and, in addition, be imprisoned for thirty days in the jail of the county of Erie.   If the fine be not paid the contemnor shall serve thirty days, to be computed from the expiration of the definite term just given.