Charles Marks, J.
Petitioner has instituted this summary proceeding adjudging respondents guilty of criminal contempt of court by reason of violation of subdivision B of section 750 of the Judiciary Law in that they have unlawfully practiced and assumed to practice law and have held themselves out as authorized to do so. In addition, judgment of permanent injunction is sought restraining respondents from practicing or assuming to practice law directly or indirectly and for further injunctive relief with respect to the book authored by the respondent Dacey 1 ‘ How To Avoid Probate ’ ’, published and distributed with forms. It is alleged in the petition that Dacey has caused to be assigned to the petitioner National Estate Planning Council the copyright pertaining to the book. Agreement was reached between the petitioner and respondent Crown Publishers Inc. for publication and sale of the book together with various forms. Agreements have been reached also with the respondents Doubleday & Co. Inc. and Brentano’s Inc. and for the distribution and sale in New York of the book together with forms. Arrangements have been made pursuant to such agreements by which the parties have severally and jointly caused advertisements to be published and disseminated to members of the public in the State of New York, representing that the forms included in the book were prepared by “ one of the country’s leading professional estate planners ”, that the use thereof would enable the purchaser to avoid probate and to make gifts to minors and charities and to save taxes. It was represented also in such advertising that the materials offered for sale included 23 trust instruments and 12 will forms with understandable instructions and ready for use, the form in each instance being detachable from the book for actual use. Further, it has been represented that the forms should be prepared by a member of the public and were legally sufficient to accomplish the indicated purpose. All of these things, it is alleged, were done by the author to circumvent an injunction which had been issued by the Superior Court of Fairfield County, Conn, and affirmed by the Supreme Court of that State. The injunction prohibited Dacey from performing the acts and rendering the advice of which complaint was made to members of the public in the State of Connecticut directly. Finally, it is alleged that the respondents are engaged in the practice of law severally and jointly in that they have offered for sale and sold and distributed to the mem *566 bers of the public of the State of New York opinions on legal problems and instructions on the creation of inter vivos and testamentary trusts, uses and gifts of property and testamentary dispositions thereof, at the same time recommending and advising the public to use and execute specific forms prepared and designed or sold by the respondents and representing that the forms are legally sufficient and proper for the purpose of carrying out the legal advice, opinions and recommendations made by the respondents. The petition then alleges, by specific reference to subject matter and page numbers of the book, the respects in which it is claimed respondents have engaged in the practice of law. Appended to the book is an order blank for additional sets of “ instructions ” represented as being sufficient to accomplish specific purposes.
The advertising material represents that the forms were designed by “ one of the country’s leading professional estate planners ’ ’, that the use of the forms enables the purchaser to effect a transfer at death of certain properties and to make gifts to minors and charities with a saving in taxes, that included 23 trust instruments and 12 wills complete with understandable instructions ready for use and detachable from the book, and that such forms can be prepared by the purchaser and used to arrange his affairs legally and that each form is sufficient to accomplish the stated purpose and to achieve the results as represented. At page 331 of the book it is stated: “As to the forms provided in this volume there will be a certain amount of nit-picking — something was omitted here, something else might have been expressed differently there, no provision was made for this or that contingency, etc. There are few things in this world which cannot be improved upon, and no claim is made that the instruments herein provided cannot be made more nearly perfect. They are legally correct, however, and may be employed with complete assurance that they will serve the readers’ purposes well.” The author makes the selection of the appropriate form for use in each instance and directions are given to the purchaser to use “ form No. — ” and the indicated form is represented as “ suitable ” for use in the specific case as explained by demonstrated examples in each particular instance. Instructions are given for the filling in of blank space and for execution in accordance with instructions. Advertising material endows the author with consummate skill and states: “ You get detailed instruction for completing each instrument plus a picture of how it should look when you finish it. * * * this ‘ do-it-yourself kit ’ for estate administration * * * is not intended as a text book * * * As to the forms provided *567 in this volume * * * They are legally correct, however, and may be employed with complete assurance that they will serve the readers purposes well.”
There is no material issue of fact. What respondents have done and what they are charged with are not in material dispute apart from the legal effect thereof. This will be more particularly disclosed as to the respondent Dacey on subsequent examination of Grievance Comm, of Bar of Fairfield County v. Dacey (154 Conn. 129, 222 A. 2d 339, app. dsmd. 386 U. S. 683). The respondent Dacey urges that the respondents did not engage in the unauthorized practice of law; that section 750 of the Judiciary Law if interpreted to prevent publication of the book is unconstitutional under Federal and State Constitutions as denying freedom of speech and of press and in addition the statute is unconstitutional for vagueness. Finally, it is urged that the relief sought is unconstitutional as imposing unlawful burden upon interstate commerce by preventing respondents from engaging in lawful activity in other States. The publisher and distributing respondents urge that none has unlawfully practiced or assumed to practice law within the meaning of subdivision B of section 750 of the Judiciary Law; that they have not been willfully defiant of the dignity and authority of the court and may not be punished for a criminal contempt; that as applied to them the -statute is unconstitutionally vague; that the statute violates their constitutional right and freedom of press; that an injunction may not be granted in a proceeding based solely on subdivision B of section 750 and, finally, if the petition is not dismissed, respondents are entitled to and demand a jury trial. The New York Civil Liberties Union urges that unauthorized practice of law like libel can claim no talismanic immunity from constitutional limitations.
It is useful first to review the determinations reached in the Connecticut State action against Dacey (Grievance Comm, of Bar of Fairfield County v. Dacey, supra). That was a proceeding in equity to restrain the illegal practice of law. It may be noted at the outset that in that State Dacey confronted members of the public and, in addition, used a 30-page pamphlet which was distributed to them. Of Dacey and of his operations the court there stated (pp. 342-343): “ Dacey also engages in what he terms estate planning * * *. But if a discussion with a customer as to his financial circumstances reveals that his assets are sufficient to warrant the creation of a trust, Dacey provides him with a thirty-page booklet entitled ‘ A Modern Plan for Your Tomorrows ’ with the subtitle ‘ An Explanation of the Dacey Trust ’. * * * When, after reading the booklet *568 and after conferring with Dacey, a client decides that he wants a Dacey trust, he informs Dacey of the manner in which he wishes his property to be distributed after his death. Thereafter, Dacey supplies a will and a trust, respectively patterned, in general, after the will form and the trust form in the booklet, prepares them by filling in the blanks, and supervises their execution. In some instances, as disclosed by the exhibits, Dacey supplied instruments which materially deviated from the forms in the booklet. Although the booklet stated that the forms contained therein were ‘ for the guidance of your attorney ’, so far as this record indicates, none of Dacey’s customers consulted an attorney in connection with the preparation and execution of these wills and trusts, nor did Dacey urge them so to do. In some instances, Dacey orally supplemented the advice in the booklet as to the tax consequences of the use of these instruments. ’ ’
Indeed, Dacey operated in such manner that: “ as a direct consequence of his preparation of the Dacey trust arrangement, Dacey virtually assured himself of what amounted to a 6 percent sales commission on almost th'e entire assets of each estate. Compensation may have been frequently deferred, but it was substantial when received. * * * The wills and trusts here were certainly not prepared ‘ as a favor to a friend.’ See Grievance Committee of Bar of New Haven County v. Payne, 128 Conn. 325, 329, 22 A. 2d 623. * * * Here, even on the statement in his own brief as to the extent of his activities, Dacey has prepared sixty-five or seventy trusts or wills over a span of thirteen or fourteen years.”
In the Connecticut case distinction was suggested by Dacey between practice of law before and outside the court and he claimed consequent distinction in the application of the Connecticut statute. Concerning that argument the court stated (p. 345): “ the practice of law, in or out of court, was clearly forbidden except in the case of persons admitted to the bar * * * The defendant’s claim that the practice of law, out of court, is not forbidden unless carried on as a business is without merit. * * * The only question is whether what he did constituted the practice of law.”
On the last-mentioned question, the court declared (p. 346): ‘ ‘ Although he claimed that usually only the printed forms in the booklet were used, the court found that deviations from the printed forms were made in several instances, and this finding is supported by the exhibits in evidence. The determination that a given form should be followed without change is as much an exercise of legal judgment as is a determination that it should *569 be changed in given particulars. In either case, legal judgment is used in the adaptation of the form to the specific needs and situation of the client. The claim that Dacey did no more than take an attestation to an otherwise already complete instrument, as a notary public might do, is so lacking in merit as to require no discussion.”
Next the court there considered whether the finding that Dacey gave advice was supported by the evidence. It was Dacey’s contention that he supplied merely general information. Concerning that issue, it was stated in referring to the 30-page pamphlet (p. 347): “The first six pages of Dacey’s booklet might perhaps fall within the classification of general information. The balance of the booklet was focused on the Dacey trust arrangement, including the Dacey trust and the Dacey will. This information was necessarily amplified in the oral discussions resulting in the preparation and execution of a will or trust adapted to the needs of the particular client. * * * The booklet distributed by the defendant contained several statements that the forms therein were ‘ for the guidance of your attorney,’ and thus clearly indicated Dacey’s awareness that the adoption, adaptation, and execution of such instruments could be properly, and legally, done only by an attorney. Notwithstanding this awareness, however, Dacey prepared the instruments, in some instances altering the forms, and supervised their execution, although the customers were not represented by attorneys. When the information given is directed toward a particular person and his needs and to a particular instrument prepared for his execution, it is no longer within the ‘ general information ’ classification but has become legal advice embraced within the phrase ‘practice of law.’ That was the case here. * * * The defendant’s effort to escape the impact of the statute on the ground that his legal activities were incidental to his other business is wholly inefficacious.” There, too, constitutional issues were raised. As to the contention that “ practice of law” is vague, it was declared (pp. 348-349): “the defendant seems to claim that the statute does not merely prohibit the practice of law but, at least as construed by this court, prohibits anything found to be ‘ commonly understood to be the practice of law ’, and for that reason lacks the required specificity.
‘ ‘ This argument is ingenious rather than persuasive. The quoted phrase was first used in the Payne case in pointing out that the statute, prior to the 1933 amendment, might be susceptible of a construction limiting its prohibitions to court appearances and activities; and that the effect of the 1933 *570 amendment was to remove any doubt that the statute forbade, not merely practice in the courts, but ‘ the performance of any acts by persons not admitted as attorneys, in or out of court, commonly understood to be the practice of law.’ Grievance Committee of Bar of New Haven County v. Payne, supra, 128 Conn. 330, 22 A. 2d 626.
“ The reasons and public policy obviously prompting the General Assembly to extend the statutory prohibition against the unauthorized practice of law to out-of-court activities, such as those engaged in by this defendant, are well set forth in State Bar Assn, of Connecticut v. Connecticut Bank & Trust Co., supra, 145 Conn. 234, 140 A. 2d 863, and need not be repeated. # * *
“ The use of the phrase ‘ commonly understood to be the practice of law ’ was merely a shorthand expression for incorporating into the term ‘ practice of law ’ the rule or construction embodied in General Statutes § 1-1, previously quoted. It did not, as the defendant claims, inject any element of uncertainty into the statutory prohibition against the practice of law. It is the practice of law, whether in or out of court, which, in the case of one not admitted to the bar of this state, is proscribed by the statute. * * * an all-inclusive definition is difficult, if not impossible, of formulation. But there is and can be no question that the activities of Dacey, in the respects involved in this case, of preparing wills and trusts for particular members of the public, and of advising, as to the desirability in their circumstances, of the specific wills or trusts so prepared for them, constituted the practice of law within the obvious scope of the statute.”
Similar issues were considered in Matter of New York County Lawyers’ Assn. (Bercu) (273 App. Div. 524) which lays to rest also the procedural objections raised here. There the respondent was an accountant and judgment of contempt and injunction were sought. The proceeding followed dismissal of an action in which the respondent had sought compensation for services rendered. The dismissal was on the ground that the services for which compensation was sought were legal services rendered by an unlicensed person. In that summary proceeding the respondent contended that his activity outside the court may not be treated as a contempt of court and may not be enjoined save by plenary suit pursuant to article 75-A of the Civil Practice Act. The court stated (pp. 527-529): “ To practice law in any manner, unless one be duly and regularly licensed and admitted to practice law, is a violation of section 270 of the Penal Law, and it has been determined that giving legal *571 advice outside of court is a violation of that statute (People v. Alfam, 227 N. Y. 334). Three procedural routes are available for enforcing the statute. One is by criminal prosecution, another is by action for an injunction under article 75-A of the Civil Practice Act, and a third is by summary proceeding under section 90, subdivision 2, and section 750, subdivision 7, of the Judiciary Law. Said sections of the Judiciary Law were enacted together in 1937 (see L. 1937, ch. 311), the one giving the Supreme Court power and control over all persons practicing or assuming to practice law, and the other giving the Supreme Court power to punish for criminal contempt any person who unlawfully practices or assumes to practice law, and providing that a proceeding under that section may be instituted by any bar association incorporated under the laws of this State. As it has also been determined that a contempt proceeding may be employed to punish an unlawful practice of law outside of court (Matter of New York County Lawyers’ Association [Cool], 268 App. Div. 901, affd. 294 N. Y. 853) Special Term properly held in this case that the proceeding was properly instituted by petitioner and that respondent was not entitled to a dismissal.
“ As to the injunction aspect of the proceeding, we think that the case may not be regarded as an action for an injunction because we agree with Special Term that such an action would be subject to the limitation of article 75-A of the Civil Practice Act, requiring a request of the Attorney-General to bring the action before it might be instituted by a bar association. We believe, however, that an injunction to the extent appropriate may be issued as part of the remedy in a summary proceeding (Matter of New York County Lawyers Association [Dawkins], 262 App. Div. 56, affd. 289 N. Y. 553). We find nothing inconsistent with article 75-A in the use of an injunction as an instrument of enforcement in such a proceeding. Article 75-A provides a method for trying out a question of alleged unlawful practice of law, the object of which is to obtain an injunction, where disputed issues of fact require a trial. The article, for example, provides for an examination before trial in such an action. It would seem that the limitation of the article is not upon the issuance of an injunction as a remedy but rather upon the institution of the kind of an action which the article contemplates. Where an action is not necessary, as where the facts are undisputed, a summary proceeding may be simpler, more expeditious and more appropriate than either a criminal prosecution or civil action. Where such a proceeding is available and appropriate, we do not regard the limitation in article 75-A as a limitation upon the court in determining the remedy *572 to be employed in enforcing its mandate. It is of some significance that sections 90, subdivision 2, and 750, subdivision 7, of the Judiciary Law were enacted after article 75-A of the Civil Practice Act. If the court may punish a contempt by fine or imprisonment, it certainly should be able to employ the lesser and more salutary remedy of injunction. * * *
‘‘ He gave certain advice to the Croft Company on a tax question. He was not the auditor for the company, nor did he do any work of any kind on the books of the company. He did not prepare the tax return. The question on which he gave advice arose as follows: The City of New York had claims against the Croft Company for retail sales taxes and compensating use taxes attributable to business done in the years 1935, 1936 and 1937. The claims had not been paid in those years, in which the company had no taxable profits. In 1943, the company made large profits which would require it to pay a minimum of 80% Federal tax on its net profits. It seemed advantageous to the company, therefore, to settle the city tax claims for the prior years in the year 1943, if a deduction for the payment could be taken on the Federal income tax return for 1943. The company was thus considering compromising the city’s claims if it was legal for the company to deduct the payment as an expense in 1943, rather than attribute the expense to the years in which the claims accrued. * * *
“ The president of the company consulted respondent, wanting to know why payment was not properly deductible in the year in which made. Respondent testified: ‘ As an accountant, I said, “ No,” and he said he could not understand as a business man why it was not deductible, and he wanted my advice based on what I know of the tax law. ’ * * *
“ Thereafter he made a study of the reported decisions on the subject, examining a score or more of the hundreds of cases on the question, and found a Treasury decision which in his view supported the position the Croft Company wished to take.” The power to punish summarily and to enjoin in implementation thereof was earlier established in Matter of New York County Lawyers’ Assn. v. Cool (181 Misc. 718, affd. 268 App. Div. 901, affd. 294 N. Y. 853). On a motion to dismiss the court at Special Term stated (pp. 719-720): “ By amendment to the Judiciary Law in 1937 (ch. 311) express authority was placed in the court to control (Judiciary Law, § 88, subd. 2) and to punish for criminal contempt (Judiciary Law, § 750, subd. 7) laymen assuming to practice law. The exercise of such powers is to be limited to cases where a court directly is involved. (Matter of N. Y. County Lawyers’ Assn. v. Lehman, 256 App. *573 Div. 677; Matter of N. Y. County Lawyers’ Assn. v. Clark, 256 App. Div. 674.) It would seem, however, in a proper case, that the powers so granted, although perhaps rarely to be exercised, should extend to any situation £ where indictment or information is not calculated to serve the ends of justice ’ (7 Halsbury’s Laws of England [2d ed.] p. 2, quoted with approval in the Lehman case supra), for, even without the aid of the aforesaid amendments to the statute, power resided in the court to restrain and to punish as a criminal contempt a direct affront by a layman. (Matter of N. Y. County Lawyers Assn. v. Dawkins, 262 App. Div. 56, affd. 289 N. Y. 553; People v. Higgins, 173 Misc. 96.) Nor is respondent’s further contention that the remedy of injunction is limited to an action by the Attorney-General (Civ. Prac. Act, art. 75-A) well taken. (Judiciary Law, § 88, subd. 2; Platter of N. Y. County Lawyers Assn. v. Dawkins, supra; Platter of N. Y. County Lawyers’ Assn. v. Clark, supra; Matter of New York County Lawyers Assn. v. Epter, 178 Misc. 907; Matter of N. Y. Co. Lawyers’ Assn. [S. T. & M. Corp.], 181 Misc. 632.) ”
It is clear beyond doubt that what Dacey did in Connecticut with a small pamphlet supplemented by a confrontation and which was thereupon enjoined, he is doing now through his enormously enlarged and radically changed book. As best he can he makes the confrontation through the book by selection, advice, guidance, instructions, questions, fitting and fashioning to individual need and by sale and further solicited sale on request of forms to fit a precise need in a given situation. The suggestion of vagueness is disingenuous. There can be no doubt that Dacey practices law within the definition of the practice of law as enunciated in Oregon State Bar v. Security Escrows, Inc. (233 Ore. 80, 89) where the court stated: ££ the practice of law includes the drafting or selection of documents and the giving of advice in regard thereto any time an informed ox-trained discretion must be exercised in the selection or drafting of a document to meet the needs of the persons being served. The knowledge of the customer’s needs obviously cannot be had by one who has no knowledge of the relevant law. One must know what questions to ask. Accordingly, any exercise of an ixxtelligent choice, or an informed discretion in advising another of his legal rights and duties, will bring the activity within the practice of the profession.”
And in People v. Alfani (227 N. Y. 334, 338) the court stated: ££ to prepare, as a business, legal instruments and contracts by which legal rights are secured and to hold oneself out as entitled to draw and prepare such as a business is a violation of the law.”
*574 The court is convinced that the raising of the objection of constitutional inhibitions is ill-considered. In Ginzburg v. United States (383 U. S. 463) a book was “ destroyed ”. There the court declared (p. 471): “ EROS was created, represented and sold solely as a claimed instrument of the sexual stimulation it would bring. Like the other publications, its pervasive treatment of sex and sexual matters rendered it available to exploitation by those who would make a business of pandering to 1 the widespread weakness for titillation by pornography. ’ Petitioners’ own expert agreed, correctly we think, that ‘ [i]f the object [of a work] is material gain for the creator through an appeal to the sexual curiosity and appetite, ’ the work is pornographic. In other words, by animating sensual detail to give the publication a salacious cast, petitioner reinforced what is conceded by the Government to be an otherwise debatable conclusion. ’ ’
Thus the emphasis was an eroticism commercially exploited solely for the sake of pruient appeal. Here the book’s sole emphasis is upon legal advice and practice. The violation of Judiciary Law is not the reader’s and user’s but the author’s, as the author of ‘ ‘ Eros ’ ’ was the creator of the pornography. Unauthorized practice of law cannot be transferred to the book and by that device to attain the security of a constitutional umbrella to immunize against the power of the court to reach unlawful practice of the law. Moreover, there is no inherent right to practice law and the State has the power to license, regulate and control. Such control, of course, is limited to the State of New York and there is not involved, as contended, interference with interstate commerce. It is thus abundantly clear that the Dacey respondents are guilty of contempt and that all respondents are enjoinable.
The sole remaining question is whether the publishing and distributing respondents may be found guilty of contempt. That Dacey willed the acts with which he is charged is clear. It is not so clear as to the corespondents. "While malice and criminal intent are not essential to proof of criminal contempt, yet nothing is offered to raise an issue on the contention that the corespondents willed more than to publish and to distribute.
Consequently, the motion is granted adjudging the Dacey respondents in contempt and injunction is granted against all of the respondents and the application is otherwise denied.