[No. 9134.   Department One.   April 5, 1911.]

THE STATE OF WASHINGTON, *Respondent*, v. A. W. BUDDRESS, *Appellant*.[1]

CONTEMPT — IN VIEW OF COURT — STATUTES. Rem. & Bal. Code, § 2372, defining contempt of court as disorderly or insolent behavior committed during the sitting of the court, "in its immediate view and presence," is declaratory of the common law and equivalent to contempt "in the face of the court."

CONTEMPT—JUDGMENT—IN VIEW OF COURT—RECITATION OF FACTS— SUFFICIENCY. A judgment of summary punishment for contempt of court sufficiently states that the acts were committed in the "immediate view and presence of the court," where it recites the pendency of the action, and that the accused was applying to have a judgment "signed by the court," and that in the presence of the judge at chambers in the court house, he used boisterous and angry language and gestures, and in the clerk's office and in the immediate presence of the court engaged in a fight; the only reasonable construction being that it was in "view" of the court although that word was not used.

SAME. Such judgment shows a contempt within Rem. & Bal. Code, § 2372, by a breach of the peace or other disturbance directly tending to interrupt the proceedings of the court.

CONTEMPT—IN VIEW OF COURT—RECESS—JUDGMENT—RECITATION OF FACTS—SUFFICIENCY. A summary judgment of contempt of court is not open to the objection that it fails to show that the court was in session, where it appears that the accused was guilty of a breach of the peace directly tending to interrupt the proceedings of a court and that the court was transacting business when the interchange of words took place; and it is immaterial that the court suspended business during a fight that followed, or was in recess.

CONTEMPT—PROCEEDINGS—CONSTITUTIONAL LAW—DUE PROCESS OF LAW. A summary punishment of contempt committed in the presence of the court is not a denial of due process of law merely because there was a delay in entering the order, due process meaning accord-

[1]Reported in 114 Pac. 879.

ing to the established forms of law; especially where defendant's appeal recited that the notice of appeal was taken in open court on the same day that the act was committed.

CONTEMPT—PROCEEDINGS—APPEAL—FACTS RECITED IN JUDGMENT—REVIEW. Upon appeal from a summary conviction of contempt committed in the presence of the court, the facts recited in the order are taken as true; and where they show jurisdiction and are sufficient to constitute contempt, there can be no further inquiry on appeal.

DUNBAR, C. J., and FULLERTON, J., dissenting.

Appeal from an order of the superior court for Jefferson county, Still, J., entered June 13, 1910, adjudging the defendants guilty of contempt of court. Affirmed.

*A. W. Buddress, pro se.*

*Jas. W. B. Scott*, for respondent.

GOSE, J.—On the 6th day of June, 1910, an order was made by the superior court of Jefferson county and filed on June 13 following, summarily adjudging the defendants guilty of contempt. The defendant Buddress has appealed.

The order, omitting title, signature, and the attestation of the clerk, is as follows:

"This cause coming on to be heard summarily in contempt proceedings herein and the defendants above named, and each of them, being personally present in above court;

"And whereas an action was pending in the above entitled court, entitled Elston Cromwell versus Samuel Irwin, in which Elston Cromwell is guardian of the estate of Ora Irwin, a minor, and said action was pending on the 6th day of June, 1910;

"And whereas, on that day said cause was dismissed without prejudice, and before the order of dismissal was signed by the court and before the court had left the court room where said cause was heard; and upon the application of A. W. Buddress, Esq., to have the said order of dismissal signed by the court and in the presence of the judge, at recess and in the chambers in the court house of said county, the defendants, A. W. Buddress and Allan Trumbull did each with the other use abusive, boisterous, angry, insulting, vicious language and gestures against each other, and did then and there in the clerk's

office in the immediate presence of the court, each with the other engage in a fight, which said quarrel and fight arose over the proceedings and proposed order in said cause; that such quarrel and fight did in fact impair, hinder, interrupt and impede the orderly course of justice in the deliberation of the court and the signing of said order of dismissal; and that said A. W. Buddress and Allan Trumbull, and each of them, had become guilty of contempt of the above entitled court;

"And whereas, the said court did at the same time by its said order adjudge and declare the said A. W. Buddress and Allan Trumbull, and each of them, guilty of contempt of said court, by virtue of said quarrel and fight, and did order said A. W. Buddress and Allan Trumbull, be punished for the contempt of court committed as aforesaid, by the payment of a fine of fifteen dollars each, and that in case said fine be not paid within five days after the entry of this order, then in such case the said defendants be committed to the custody of the sheriff, and imprisoned in the county jail until such fine is paid as provided by law, and for such imprisonment and detention this order and judgment shall be sufficient warrant and authority.

"Done in open court this 6th day of June, 1910.

"Lester Still, Judge."

The statutory power of the court to summarily punish for contempt, together with the procedure, is conferred and defined by Rem. & Bal. Code, § 1051. Rem. & Bal. Code, § 2372, subds. 1 and 3, thus defines the elements of contempt of court:

"(1)    Disorderly, contemptuous or insolent behavior committed during the sitting of the court, in its immediate view and presence, and directly tending to interrupt its proceeding or to impair the respect due to its authority."

"(3)    Breach of the peace, noise or other disturbance directly tending to interrupt the proceedings of a court, jury or referee."

These sections are but declaratory of the common law. *State v. Tugwell*, 19 Wash. 238, 52 Pac. 1056, 43 L. R. A. 717; 4 Blackstone Commentaries, 286; *Ex parte Terry*, 128 U. S. 289. The power to summarily punish for contempt

committed, as Blackstone terms it, "in the face of the court," is a power that has existed since the establishment of courts. Without such power the courts could neither preserve order nor enforce obedience to their processes. The words of the statute, "in the immediate view and presence" of the court, are equivalent in meaning to the common law phrase "in the face of the court."

The appellant's contentions are, (1) that the order states conclusions and not facts, and that it fails to recite that the contempt was committed within the "view" of the court; (2) that it does not recite that the court was in "session;" (3) that the order failing to recite the facts, he has not been accorded the due process of law guaranteed him by both the state and the Federal constitutions; and (4) that the facts do not warrant a conviction. In support of the first contention, the appellant cites the statute, Rem. & Bal. Code, § 1051; *In re Coulter*, 25 Wash. 526, 65 Pac. 759; *Otis v. Superior Court of Los Angeles County*, 148 Cal. 129, 82 Pac. 853; *Overend v. Superior Court of City and County of San Francisco*, 131 Cal. 280, 63 Pac. 372; *Batchelder v. Moore*, 42 Cal. 412; *State v. District Court of Taylor County*, 124 Iowa 187, 99 N. W. 712; *Drady v. District Court of Polk County*, 126 Iowa 345, 112 N. W. 115; *Crites v. State*, 74 Neb. 687, 105 N. W. 469; *State ex rel. Breen v. District Court*, 34 Mont. 107, 85 Pac. 870; 9 Cyc. 66, note 64.

It is held in the *Coulter* case that, while the legislature may not lawfully take away the power to punish for contempt committed in the presence of the court, it can reasonably limit the exercise of that power and declare what acts or omissions constitute contempt, define the character and limit the amount of punishment that may be inflicted, prescribe the method of procedure by which the recusant party shall be brought before the court, and the procedure to be followed upon the trial. The other cases cited announce the rule that, in contempt proceedings, courts exercise a strictly limited jurisdiction; and that a judgment convicting one of contempt

is invalid, unless the record of conviction shows upon its face that the matter charged was within the jurisdiction of the court. They announce the further rule that, if the contempt consists of acts done in the immediate view and presence of the court, the judgment must so recite, and the facts recited must come within the legal definition of contempt. These views are in harmony with the express provisions of our statute.

We think, however, that the order does state that the acts were committed in the "immediate view and presence" of the court. It recites, that an action was pending in court; that the appellant was applying to have an order of dismissal "signed by the court," and that in the presence of the judge at chambers in the court house, the appellant used "boisterous" and "angry" "language" and "gestures," and that in the clerk's office, "in the immediate presence" of the court, he engaged in a fight with his codefendant. While the court did not use the word "view," we think that the only reasonable construction of the language of the order, read as an entirety, is that the unseemly acts recited were done in the face of the court. Any other construction would narrow the plain meaning of the order. It is clear also that, while the order contains certain adjectives that are conclusions, it recites facts which are highly contumacious in a member of the bar and an officer of the court. The word "boisterous" is defined in Webster's New International Dictionary as, "loud; stormy; noisy." If the appellant and his codefendant used towards each other loud and angry language and gestures, and engaged in a fight in the presence of the court while the former was applying for an order, their conduct was contemptuous, and the court would have been both lacking in dignity and recreant to its duty if it had not visited summary punishment upon them.

The second contention is, that the order fails to disclose that the court was in session. It does, however, show a "breach of the peace, noise or other disturbance, directly tending to interrupt the proceedings of a court." This, as we have

seen, is made contempt of court by the statute. It affirma-
tively appears in the order that the court was transacting
business when the exchange of words commenced. If it tem-
porarily suspended business during the fight for want of
parties, those who brought about the suspension cannot com-
plain. *Baker v. State*, 82 Ga. 776, 9 S. E. 743, 14 Am. St.
192, 4 L. R. A. 128; *Barrett v. State*, 1 Wis. 156; *In re
Neagle*, 135 U. S. 1. In the *Baker* case, Baker, a suitor in
the court, a few minutes before the convening of court at the
morning hour in the court room, discussed his case in the
presence of the judge and in the presence and hearing of the
jurors before whom his case would probably be tried, if tried
at that term. The court said to him that the jurors who were
present might be called to try his case, and warned him to re-
frain from further commenting upon it. To a second warn-
ing, he replied: "I have got as much right to talk as you
have. The court is not in session and you have no more power
than I have." Upon these facts he was summarily adjudged
guilty of contempt. In considering the question as to whether
the court was in session, as a matter of law, when the remarks
were made, the court said:

"And we think that whenever a judge of the city court is
in the court room during term, and a suitor there calls upon
him to deal in any manner with, or answer questions concern-
ing, a pending case, the court is in session respecting that
case, to the extent at least of keeping the suitor in order in
discussing it or making remarks about it, and that any mis-
behavior of the party then and there occurring takes place
in the presence of the court, within the spirit and meaning of
the statute. . . ."

The statute referred to is no broader in its scope than our
statute. It was further said that the court is not dissolved by
a recess, and that misbehavior affecting the administration of
justice, in the court house and in the immediate presence of
the judge, especially by a suitor, is misbehavior in the presence
of the court, and may be punished summarily as a contempt

of court. We are in hearty accord with the view announced in that case.

The appellant was not denied due process of law. Due process of law means that the procedure was according to the established forms of law. *Drady v. District Court, supra.* Jurisdiction of the person of the appellant attached instantly upon the contempt being committed in the face of the court. That jurisdiction was not lost by the delay in filing the order. The order recites that it was made in open court, the defendants "being personally present." *Ex parte Terry, supra.* Moreover, the only notice of appeal given by the appellant was in open court on the day the contempt was committed, and the appeal bond recites that the appellant was adjudged guilty of contempt on the day of the date of the order. It is apparent that, if the order was not made upon that date, the notice of appeal would be ineffectual.

The last contention is that the facts do not warrant a conviction. The law is well settled that, in hearing cases upon appeal, for contempt committed in the presence of the court, the facts recited in the order are taken as true, and no other or different facts will be considered.

"Every court is the exclusive judge of its own contempts, and its judgment is subject to review only upon the point of jurisdiction." *Otis v. Superior Court, supra.*

In *Ex parte Terry,* at pages 308-9, this view is admirably stated in the following language:

" 'A breach of the peace *in facie curiae* is a direct disturbance and a palpable contempt of the authority of the court. It is a case that does not admit of delay, and the court would be without dignity that did not punish it promptly and without trial. Necessarily there can be no inquiry *de novo* in another court, as to the truth of the fact. There is no mode provided for conducting such an inquiry. There is no prosecution, no plea, nor issue upon which there can be a trial.' So in *Whittem v. State,* 36 Indiana 311,: 'When the contempt is committed in the presence of the court, and the court acts upon view and without trial and inflicts the punishment,

there will be no charge, no plea, no issue and no trial; and the record that shows the punishment will also show the offence, and the fact that the court had found the party guilty of the contempt; on appeal to this court any fact found by the court below would be taken as true, and every intendment would be made in favor of the action of the court.' Again, in *Ex parte Wright*, 65 Indiana 504, 508, the court after observing that a direct contempt is an open insult in the face of the court to the persons of the judges while presiding, or a resistance to its powers in their presence, said: 'For a direct contempt the offender may be punished instantly by arrest and fine or imprisonment, upon no further proof or examination than what is known to the judges by their senses of seeing, hearing, etc.' 4 Stephens Com. Bk. 6, c. 15; Tidd's Practice, 9th ed. London 1828, 479-80; *Ex parte Hamilton & Smith*, 51 Alabama 66, 68; *People v. Turner*, 1 California 152, 155. It is true, as counsel suggest, that the power which the court has of instantly punishing, without further proof or examination, contempts committed in its presence, is one that may be abused, and may sometimes be exercised hastily or arbitrarily. But that is not an argument to disprove either its existence, or the necessity of its being lodged in the courts. That power cannot be denied them without inviting or causing such obstruction to the orderly and impartial administration of justice as would endanger the rights and safety of the entire community. What was said in *Ex parte Kennedy*, 7 Wheat. 38, 45, may be here repeated: 'Wherever power is lodged it may be abused. But this forms no solid objection against its exercise. Confidence must be reposed somewhere; and if there should be an abuse, it will be a public grievance, for which a remedy may be applied by the legislature, and is not to be devised by courts of justice.' "

In *State ex rel. Breen v. District Court, supra*, in speaking of the conclusiveness of the facts recited in the order, it is said:

"In such case, however, we may not look beyond the contents of the order itself."

In *State v. Nicoll*, 40 Wash. 517, 524, 82 Pac. 895, speaking directly to the question, it is said:

"The question whether it [the court] arrived at its con-

clusion summarily or arbitrarily, or after the most painstaking investigation, is not subject to review here."   .

See, also, *Rawson v. Rawson*, 35 Ill. App. 505.

In the very nature of things, the orderly administration of justice makes it indispensable that the facts found by the court shall be conclusive in a judgment for contempt committed in the presence of the court. If the facts found show jurisdiction and are sufficient in law to constitute contempt, further inquiry is foreclosed. The court acts upon what it sees and hears, and upon that evidence and no other the right to inflict summary punishment must rest. Were we to consider the statement of facts certified by the referee, we would not be reviewing the case upon the facts upon which the court acted, but trying it anew upon another state of facts. This would be anomaly in appellate procedure.

The judgment is affirmed.

MOUNT and PARKER, JJ., concur.

DUNBAR, C. J. (dissenting)—Notwithstanding the forceful argument made by Judge Gose, and the pertinency of the cases cited in the opinion, I am unable to divest my mind of the idea that, in the interest of liberty and in harmony with the genius of our government, every citizen should have a right at some time and in some place to defend himself against a charge of crime a conviction of which works a deprivation of his liberty or his property rights. The inconveniences suggested in the majority opinion may arise, but the considerations I have mentioned are paramount. I am therefore compelled to dissent.

FULLERTON, J., concurs with DUNBAR, C. J.