[No. 13714.   Department One.   January 2, 1917.]

*In the Matter of the Contempt of Court of* J. E. WILLIS.[1]

CONTEMPT—APPEAL—REVIEW—RECITALS—PRESUMPTIONS.   Upon appeal from a judgment of contempt of court committed in the presence of the court, the facts recited in the judgment are taken as true.

SAME—WHAT CONSTITUTES.   To circulate a pamphlet in the court room reflecting upon the trial judge and to interrupt the proceedings in an insolent manner constitutes contempt of court in the view and presence of the court, under Rem. Code, § 1049.

SAME — SUMMARY JUDGMENT — JURISDICTION — DELAY IN ENTRY. Jurisdiction attaches immediately to punish for a contempt committed in the view and presence of the court; and where the offender left the room before he could be apprehended by the sheriff, and was brought into court the next day, a delay of one day in entering the order is not unreasonable or sufficient to divest the court of jurisdiction.

SAME—SUMMARY JUDGMENT—NECESSITY OF HEARING.   Where a contempt is committed in the view and presence of the court, summary punishment without a hearing, as authorized by Rem. Code, § 1051, violates no constitutional rights.

SAME—SENTENCE—EXCESSIVE PUNISHMENT.   For a contempt of court committed by an attorney by circulating a pamphlet reflecting on the trial judge while the court was in session and by repeatedly interrupting the proceedings, punishment by a fine of $300 and three months' imprisonment in the county jail is excessive, and should be reduced to $100 and 24 hours in jail.

Appeal from an order of the superior court for Lewis county, Rice, J., entered April 4, 1916, adjudging defendant guilty of contempt of court.   Modified.

*Miller & Lysons*, for appellant.

*C. A. Studebaker* and *W. O. Grimm*, for respondent.

*J. E. Willis, in propria persona.*

MAIN, J.—The defendant, J. E. Willis, appeals from an order of the superior court adjudging him guilty of con-

[1]Reported in 162 Pac. 38.

tempt committed in the view and presence of the court, and fixing the penalty. The order, omitting the formal parts, is as follows:

"Be it known, That on the 3rd day of April, 1916, the above named court being in open session in the court room in Chehalis, Washington, and having under consideration various motions and court matters of public concern, the said J. E. Willis, above named, being then a member of the bar of said court and practicing his profession before said court, appeared in the court room of said court, while so in open session, in a defiant and contemptuous manner, then having with him certain pamphlets or documents, a copy of which is marked Exhibit "A" and made part of the record of these proceedings; and the said J. E. Willis did then and there proceed to circulate said pamphlets in said court room in the immediate presence of the judge of said court while said court was in open session and transacting public business as aforesaid, and the said J. E. Willis holding and exhibiting said pamphlets in such a manner as to make it impossible that the judge of said court, being Alonzo E. Rice, could avoid seeing and recognizing the said pamphlets, which said pamphlets contained matters highly insulting to and contemptuous of the said court, and the judge thereof.

"That during such proceedings in court, as then being held, the said J. E. Willis, in a contemptuous, disorderly and insolent manner, so circulated the said pamphlets in said court room and did then and there attempt to pass and hand to members of the bar, then present before said court, and did actually deliver one copy thereof to one member of the bar, then present; that thereupon the court directed said member of the bar who had received the pamphlet to pass it up to the court, which was done, and the court thereupon recognized said pamphlet, which is entitled, 'The Crimes and Misdemeanors of Hon. Alonzo E. Rice,' purporting to be written by the said J. E. Willis, which document or pamphlet was thereupon passed by the court to the clerk and is the identical document which is herein referred to as Exhibit "A"; that said J. E. Willis did further frequently interrupt the court in matters in which he, the said Willis, was not concerned, and did then and there endeavor to interrupt, and did interrupt, the judicial proceedings then being had

by attempting to engage the judge of said court in an altercation with him, the said J. E. Willis, and at such time and place the said J. E. Willis did rise to his feet in a contemptuous and insolent manner, and did then and there interrupt the court by using the following language: 'If you have anything to do or say to me, do it, don't threaten it.'

"That the manner of the said J. E. Willis in so conducting himself was contemptuous and tended to humiliate and embarrass the court in its proceedings, and to disgrace the said court in the eyes of the members of the bar then present, and by his conduct he did interrupt and cause to be suspended the judicial proceedings in which the court was then engaged. as aforesaid, by his attitude of interruption, and defiance.

"That immediately after the said J. E. Willis had used the language above quoted, the court informed him that it was then considering other matters and for him to be seated and to be quiet, but in open defiance of such request the said J. E. Willis used the following language: 'Is that a threat you make?' 'Is the court in session?' 'Has the court adjourned?' 'Has the court adjourned?' 'I ask that a record be made of this,' at the same time exhibiting in his hands the documents above referred to a copy of which is marked Exhibit "A," and the court was thereby interrupted in its judicial proceedings then being held, and that the said Willis by his said conduct then and there gave the court to understand, and the members of the bar present to understand, that he proposed to address the court concerning such pamphlets and their contents; whereupon the court was compelled to and did send for the sheriff of said county to preserve order in said court, but before the said sheriff could arrive, and before the said court, or the judge thereof, could enforce any order or judgment of contempt against the said J. E. Willis, he departed from the court room without apology or excuse.

"Be it further remembered that on this 4th day of April, 1916, the court having fully considered all the matters and things hereinabove related, did cause the said J. E. Willis to appear in person before this court, and did thereupon briefly recite to the said J. E. Willis the reasons of the court for so doing and did thereupon and while the said J. E. Willis was present in court announce that the said J. E. Willis was guilty of contempt of this court by reason of the matters and

things above set forth and did announce sentence as herein-after set forth.

"It is therefore the judgment of this court, and it is ad-judged that said J. E. Willis is guilty of contempt of this court and that he be fined, and required to pay the sum of three hundred dollars, as and for contempt of court, and in addition thereto, that said J. E. Willis be sentenced and he is hereby sentenced to serve ninety days in the county jail of Lewis county, Washington, and he is hereby remanded to the custody of the sheriff of Lewis county, Washington, until such sentence is served and such fine is paid, or, if such fine be not paid, then that he be kept in the county jail as afore-said for such period, in addition to such 90 days, until such fine has been extinguished by confinement in such jail at the statutory per diem in such cases provided for."

This order was made and entered on April the 4th, 1916. The facts, as stated in the order, must be here accepted as true. In *State v. Buddress*, 63 Wash. 26, 114 Pac. 879, it was said:

"The law is well settled that, in hearing cases upon ap-peal, for contempt committed in the presence of the court, the facts recited in the order are taken as true, and no other or different facts will be considered."

The first assignment of error is that the facts did not con-stitute contempt. It seems reasonably plain from the facts recited in the order that, on April 3d, 1916, the date on which the contempt is charged to have been committed, the appellant, an attorney at law, went to the court room, where the Honorable A. E. Rice was presiding as judge, for the purpose of circulating a pamphlet purporting to have been written by himself, and entitled "The Crimes and Misde-meanors of Hon. Alonzo E. Rice," and for the purpose of engaging the trial judge, while court was in session, in an altercation. It does not appear that the appellant, on this occasion, had any business before the court or appeared therein in any matter then pending. While the business of the court was being conducted, the appellant repeatedly in-terrupted the course of the proceedings, holding the pam-

phlet in his hands so that it could be seen and observed by the trial judge, and attempted to, and did in fact, circulate the pamphlet in the court room. If the facts stated in the order are true, it requires no argument to show that the appellant's conduct was contemptuous, and his behavior insolent toward the trial judge while holding court, and tended to interrupt the due course of judicial proceedings. This, under Rem. Code, § 1049, constituted contempt in the view and presence of the court. It is said in the appellant's brief that, as a citizen, he had a right to be in the court room. This is undoubtedly true, but neither as a citizen nor as an attorney did he have a right to engage in contumacious conduct toward the trial judge while the court was in session.

The second assignment of error is that, since the contempt was committed on April 3d, the court had no power to summarily punish on April 4th, the day following. The order recites that, after the trial judge directed that the sheriff be called into the court room, the appellant left the court room before the arrival of the officer. On the day following, at the direction of the court, the sheriff brought the appellant into court, where he was summarily found guilty of contempt committed on the day previous, and the order above set out entered. The law is that, when a contempt is committed in the view and presence of the court, jurisdiction of the person of the offender attaches immediately upon the commission of the contempt. *State v. Buddress, supra; Middlebrook v. State,* 43 Conn. 257, 21 Am. Rep. 650; *Ex parte Terry,* 128 U. S. 289. In the Connecticut case cited, the defendant, after committing the contempt in the presence of the court, and before the order was entered, fled from the jurisdiction. The trial judge, against whom the contempt was committed, entered the order nevertheless, adjudging him in contempt, which order was sustained by the supreme court of that state. In *Ex parte Terry,* the order was entered while the defendant was not in the court room, and the supreme court of the United States sustained the order. These cases both pro-

ceed upon the theory that jurisdiction attached immediately upon the commission of the contempt, and was not lost by the absence of the defendant. In the *Buddress* case, *supra*, the order was not entered until some days after the contempt was committed, and it was there said: "That jurisdiction was not lost by the delay in filing the order."

In the present case, it cannot be said that the defendant was prejudiced by the delay of one day in entering the order. On the day succeeding the contempt, the temper of the trial judge was, no doubt, not less favorable to the defendant than it would have been on the day previous. The defendant was ordered brought into court with reasonable promptness, and the delay of one day cannot be held either unreasonable or sufficient to divest the court of jurisdiction when it had once attached.

The next assignment of error is in entering the judgment without giving the appellant an opportunity to be heard in his own defense. It must be kept in mind that the appellant was guilty of contempt in the view and presence of the court, and that, in such cases, the statute, Rem. Code, § 1051, provides for summary punishment. By inflicting summary punishment, no constitutional right of the appellant was invaded. Upon this question, in *Ex parte Terry*, *supra*, the Federal Supreme Court, at page 313, used this language:

"We have seen that it is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public

and private rights, nor the officers charged with the duty of administering them. To say, in case of a contempt such as is recited in the order below, that the offender was accused, tried, adjudged to be guilty and imprisoned, without previous notice of the accusation against him and without an opportunity to be heard, is nothing more than an argument or protest against investing any court, however exalted, or however extensive its general jurisdiction, with the power of proceeding summarily, without further proof or trial, for direct contempts committed in its presence."

Cases which deal with a contempt not committed in the view and presence of the court are not in point when the defendant is charged with a contempt in the presence of the court. *State v. Nicoll*, 40 Wash. 517, 82 Pac. 895, and *McClatchy v. Superior Court of County of Sacramento*, 119 Cal. 413, 51 Pac. 696, 39 L. R. A. 691, are both cases where the contempt was not committed in the presence of the court. Therefore, what is said in those decisions is not relevant to the facts in this case.

The last assignment of error is that the punishment inflicted is excessive and unreasonable. In this proceeding, the appellant could not be called upon to answer for the publication of the pamphlet, because this did not occur in the presence of the court; neither could he be called upon to answer for its circulation not in the presence of the court. The only contumacious conduct for which the appellant could, in this proceeding, be punished was his conduct in the court room on April 3d, while the court was in session, and this consisted in the circulation of the pamphlet, and repeated interruptions of the court, when the appellant had no business to call to the court's attention. But, in determining what would be a proper punishment, sight must not be lost of the fact that the appellant's conduct was deliberate. It is not one of those cases where an attorney, in the heat and excitement of a trial, may so far forget himself as to overstep the bounds of propriety, and transgress proper judicial decorum.

In our opinion, the appellant's conduct merits a fine of one hundred dollars, and imprisonment in the county jail for a period of twenty-four hours' time.

The cause will be remanded, with direction to the superior court to modify the judgment by inserting therein the sum of one hundred dollars, instead of three hundred dollars, as specified in the order, and by inserting in the order twenty-four hours in the county jail of Lewis county, Washington, instead of ninety days.

MORRIS, C. J., CHADWICK, PARKER, and ELLIS, JJ., concur.