[Nos. 33729, 33730. *En Banc.* February 4, 1960.]

THE STATE OF WASHINGTON, *Plaintiff*, v. ERMIE ESTILL, *Defendant.*

*In the Matter of the Commitment of* C. J. BROOKS *for Contempt of Court.*

*In the Matter of the Commitment of* ROBERT REDDITT *for Contempt of Court.*[1]

[1]Reported in 349 P. (2d) 210.

*John Caughlan,* for appellants.

*Charles O. Carroll* and *James A. Andersen,* for respondent.

*Byron D. Coney, amicus curiae.*

WEAVER, C. J.—Subsequent to the filing of the departmental opinion in this case—to which we refer for a statement of the facts involved (*State v. Estill,* 50 Wn. (2d) 331, 311 P. (2d) 667 (1957))—this court granted a petition for rehearing.

After argument *en banc,* a majority of the court agrees with the conclusion of the departmental opinion that the judgment of contempt must be reversed, but does not subscribe to the reasons set forth.

This is a proceeding for direct contempts committed in the presence of the trial court as distinguished from constructive contempt. See *State ex rel. Erhardt v. MacGillivray,* 52 Wn. (2d) 485, 326 P. (2d) 738 (1958). The court's order adjudging contempts of court and imposing penalties sets out in detail the testimony of each appellant which was held to be false and to constitute perjury.

While perjury, or false swearing, may constitute contempt, two additional elements must be present: (1) the court must have judicial knowledge of the falsity; (2) the false testimony must obstruct the court in performance of a judicial function. 17 C. J. S. 31, Contempt, § 24.

Although the opinion (50 Wn. (2d) 331, 333, 311 P. (2d) 667), states:

"We do not question the court's finding that the testimony was perjury or that it was intentional and willful, and given for the purpose of affecting the outcome of the trial in which they were materially, though indirectly, interested.";

the court could not judicially know the testimony was false until testimony was taken to establish the falsity.

It is stated in *Fawick Airflex Co. v. United Electrical Radio & Machine Workers of America, Local 735*, 87 Ohio App. 371, 382, 92 N. E. (2d) 436 (1950):

"By the greater weight of judicial authority, in order to hold a witness guilty of summary contempt for testifying falsely, the court must have judicial knowledge that the witness's sworn testimony was in fact false. A well founded belief of its untruthfulness is not sufficient. . . ."

In *In re Michael*, 326 U. S. 224, 229, 90 L. Ed. 30, 66 S. Ct. 78 (1945), an adjudication of contempt on the ground of perjury was reversed because, as here, collateral evidence was necessary to prove the perjury. The court there said:

" . . . In the instant case there was collateral inquiry; the testimony of other witnesses was invoked to convince the trial judge that petitioner was a perjurer. Only after determining from their testimony that petitioner had wilfully sworn falsely, did the Court conclude that petitioner 'was blocking the inquiry just as effectively by giving a false answer as refusing to give any at all.' This was the equivalent of saying that for perjury alone a witness may be punished for contempt. . . ."

The same rule is announced in *People v. Harrison*, 403 Ill. 320, 86 N. E. (2d) 208 (1949).

Because it was necessary for the trial court to receive evidence in order to establish the falsity of the testimony, it did not judicially know that the accused's testimony was false; therefore, it was not a direct contempt. The judgment must be reversed.

■ Further, assuming that the testimony was false, there is no showing that it obstructed the court in the performance of its duty.

In *Ex Parte Hudgings*, 249 U. S. 378, 383, 384, 63 L. Ed. 656, 39 S. Ct. 337, 11 A. L. R. 333, the United States supreme court held:

" . . . that in order to punish perjury in the presence of the court as a contempt there must be added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty. . . . If the conception were true, it would

follow that when a court entertained the opinion that a witness was testifying untruthfully the power would result to impose a punishment for contempt with the object or purpose of exacting from the witness a character of testimony which the court would deem to be truthful; and thus it would come to pass that a potentiality of oppression and wrong would result and the freedom of the citizen when called as a witness in a court would be gravely imperiled."

The judgment, then, must be reversed because the testimony, assuming it was false, did not obstruct the court in the performance of its functions.

We turn next to that portion of the departmental opinion which states:

"As to the existence of common-law contempts in this state, we have set out the statutory definition in its entirety because its comprehensive nature indicates that the legislature intended to cover the entire field of contempts. The legislature has the power of superseding the common law. It has elected to do so in this instance. We, therefore, limit ourselves to an interpretation of the statute." *State v. Estill, supra,* at p. 334-35.

A majority of the court does not agree that the legislature has the power to supersede the inherent power of a constitutional court to punish for contempt; nor does a majority of the court believe that the legislature has attempted to do so.

"Except where the constitution otherwise provides, the legislature may not destroy, or abridge, or limit, as by definition, the inherent power of courts to punish for contempt. . . ." 17 C. J. S., Contempt, 58, § 43 (b).

It is stated in 12 Am. Jur., Contempt, 424, § 49, as follows:

"Generally if a court derives its powers from the Constitution, then its power to punish for contempt can be withdrawn only by constitutional provision; if it obtains its powers from the legislature, the legislature may restrict it in this respect as well as in others. . . ."

The court so held in *State ex rel. Dorrien v. Hazeltine,* 82 Wash. 81, 87, 143 Pac. 436 (1914):

"We have held that the court has inherent power to punish for contempt, both direct and constructive, a power

proceeding from the constitution, and that, while the legislature may not take away the power, it may define the procedure by which the recusant party may be brought before the court, and the procedure to be followed at the trial. . . ."

And, again, in *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P. (2d) 397 (1936), this court held:

". . . But the courts are not required to recognize a legislative restriction which has the effect of depriving them of a constitutional grant or of one of their inherent powers. What the legislature has not given, it cannot take away. The legislature cannot indirectly control the action of the court by directing what steps must be taken in the progress of a judicial inquiry, for that is a judicial function. . . . [p. 418]

"The power to punish for contempt of court being essential to the efficient action of the court and the proper administration of justice, it is lodged permanently with that department of government, and the legislature may not, by its enactments, deprive the court of that power or curtail its exercise. . . ." [p. 424]

In *Keller v. Keller,* 52 Wn. (2d) 84, 86, 323 P. (2d) 231 (1958), this court pointed out that contempt proceedings in this jurisdiction may be placed in three categories, one of which is

". . . contempt proceedings resulting from the long-exercised power of constitutional courts (1) to punish summarily contemptuous conduct occurring in the presence of the court, (2) to enforce orders or judgments in aid of the court's jurisdiction, and (3) to punish violations of orders or judgments."

Other jurisdictions have also concluded that constitutional courts have inherent power to punish for contempt, a power which cannot be taken away by the legislature.

"A power which the legislature does not give, it cannot take away. If power, distinguished from jurisdiction, exists independently of legislation, it will continue to exist notwithstanding legislation." *Hale v. State,* 55 Ohio St. 210, 215, 45 N. E. 199, 200 (1896).

Also: *In re San Francisco Chronicle,* 1 Cal. (2d) 630, 634,

36 P. (2d) 369 (1934); *Fisher v. Pace,* 336 U. S. 155, 93 L. Ed. 569, 69 S. Ct. 425 (1949).

The judgment is reversed.

HILL, DONWORTH, FINLEY, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.

MALLERY, J. (concurring in the result only)—The Departmental opinion in 50 Wn. (2d) 331, 311 P. (2d) 667, was filed on May 23, 1957. The trial court had found that the defendants' perjury during a trial constituted contempt of court under RCW 7.20.010, subd. 1 [*cf.* Rem. Rev. Stat., § 1049]. The departmental opinion set out the statute in full. It reversed the trial court on the narrow, but conclusive, ground that the perjury was not contempt of court under the subdivision relied upon because *it did not corrupt the judicial process,* notwithstanding the fact that perjury is always intended to affect the result of a trial.

This is one of the two grounds upon which the majority opinion now reverses the trial court. That ground is stated in the opinion in this language:

"The judgment, then, must be reversed because the testimony, assuming it to be false, *did not obstruct the court in the performance of its functions.*" (Italics mine.)

The only essential difference between the departmental opinion and the present majority opinion is that the departmental opinion interprets the controlling statute while the majority opinion ignores it and depends wholly upon court decisions. Regarding these, it may be noted that the Washington citations are not similar in their facts, and the foreign citations are not binding upon us as precedents.

It is not the court's prerogative to ignore a statute as the majority does in this case. The constitution to which the court owes its existence and from which it derives its authority lays a mandate upon it to recognize the authoritative acts of the other two branches of the government. A legislative enactment is binding upon the court unless, of course, its provisions violate the constitution. In which case, it is the court's duty to invalidate it and to give its reasons for so doing.

The majority opinion supersedes the departmental opinion solely because of the court's reluctance to concede the validity of the controlling statute which was a *territorial* enactment and antedates the constitution itself. Territorial laws have a specific constitutional sanction and approval which subsequent state statutes do not have.

Art. XXVII, § 2, of the state constitution provides:

"All laws now in force in the Territory of Washington, which are not repugnant to this Constitution, shall remain in force until they expire by their own limitation, or are altered or repealed by the legislature: *Provided,* That this section shall not be so construed as to validate any act of the legislature of Washington Territory granting shore or tide lands to any person, company or any municipal or private corporation."

For a territorial statute to be invalid upon the ground that it is "repugnant to this Constitution," it is necessary that there be some provision of the constitution which can be said to conflict with it. Thus, as an example, the territorial act providing for the extra judicial settlement of claims arising out of the relocation of roads became invalid by necessary implication in the light of Art. I, § 16, of the constitution which vested eminent domain proceedings exclusively in the courts.

State statutes are continuously subjected to scrutiny as to the propriety of their titles or the number of their subjects and are invalidated when the courts are not satisfied with them in this regard. Not so territorial acts. They are validated by the constitution itself. Thus, the territorial legislative technique of enactment is put beyond the reach of the court upon such grounds.

Our constitutional forefathers were aware of the contempt statutes. They put no provision in the constitution "repugnant" to them. Under the validating provision in the constitution, the act of adopting it constituted a formal validation of the territorial acts in question.

I think the courts are neither above the constitution nor the constitutionally validated territorial contempt statutes. I therefore reject the majority theory that the territorial

enactment is a nullity for some unspecified reason.

The statement in the departmental opinion that is the sole cause of majority concern is [p. 334]:

"As to the existence of common-law contempts in this state, we have set out the statutory definition in its entirety because its comprehensive nature indicates that the legislature intended to cover the entire field of contempts. The legislature has the power of superseding the common law. It has elected to do so in this instance. We, therefore, limit ourselves to an interpretation of the statute."

Curiously enough, after ignoring the statute on the theory that the legislature cannot supersede the common law, the majority does not cite or rely upon the common law in reaching its decision. The obvious explanation of this is that perjury was not a contempt under the common law and, hence, citations in support of the opinion are not available.

Perhaps it would be useful to state what constitutes the common law that is in force in Washington. In *Cooper v. Runnels,* 48 Wn. (2d) 108, 291 P. (2d) 657, 57 A. L. R. (2d) 597, this court stated generally that the common law as adopted in this state consists of [p. 112]:

"The common law of England, including the English statutes in force at the date of the Declaration of Independence, continues to be the law of this state except as it is inconsistent with state and Federal constitutions, or incompatible with the institutions and society of this state, or modified by statute. RCW 1.12.030; RCW 4.04.010; *In re Hudson,* 13 Wn. (2d) 673, 684, 126 P. (2d) 765 (1942) and cases cited."

From this, it conclusively appears that contemporary decisions of foreign states are not binding upon us as common law or at all.

The distinction between the common law upon contempts and the common law relating to crimes is quite clear. A *summary judgment* has always been the earmark of a contempt. An indictment or information and the right to a jury trial and due process of law characterized the common law crimes.

In 3 Coke's Institutes 164, the case of *Re Rowland v. Eliza,* decided at Mich. 10 Jan. term, 1613, in the Star Chamber, is discussed. This case has been mistakenly cited for the proposition that common-law contempt included perjury. The better authority is that Coke's discussion of this case substantiates the opposite conclusion. Coke clearly says that "perjury in a witness . . . was punishable by the common law, either upon an indictment, or in an information, or by this act in an information." In other words, perjury was not punishable summarily. The perjurer was accorded due process of law as in the case of all other common-law crimes, which included being charged by indictment or information and tried by a jury.

In 4 Blackstone's Commentaries, chapter XX, p. 1668, it is stated that perjury is an indictable offense. Nowhere in this work is there any discussion of *summary conviction of perjurers,* although there is an extensive discussion of the entire list of common-law contempts for which *summary punishment* could be imposed.

I concur in the result of the majority opinion, but disapprove a judicial technique which ignores Washington statutes and treats foreign citations as if they were binding precedents to be followed in this state.

FOSTER, J. (concurring)—While I agree fully with all that is said in the court's opinion, it is appropriate to state an additional reason for my concurrence.

The statute upon which the departmental opinion relies (RCW 7.20.010) is a territorial act (Code of 1881, § 725, p. 151; Code of 1877, § 730, p. 147; Code of 1869, § 667, p. 167; Rem. Rev. Stat., § 1049.) Before statehood, the statute was valid because the territorial courts were of legislative creation, and could even be abolished by legislative action. After the adoption of the constitution, the government was divided into three coordinate branches, and jurisdiction was conferred upon the superior court by Art. IV, § 6, and jurisdiction of this court conferred by Art. IV, § 4. Thereafter, the legislature had no power to enlarge or diminish the

jurisdiction of either. *North Bend Stage Line v. Department of Public Works*, 170 Wash. 217, 16 P. (2d) 206.

Territorial statutes repugnant to the subsequently adopted constitution were thereby abrogated. *Duncan Township v. Stayr*, 106 Wash. 514, 180 Pac. 476.