[No. 22376-7-II.    Division Two.    July 2, 1999.]

THE STATE OF WASHINGTON, *Appellant*, v. SHELDON KARL DUGAN, SR., *Respondent*.

*James Jay Stonier, Prosecuting Attorney*, for appellant.
*William L. Dowell*, for respondent.

SEINFELD, J. — Cowlitz County Deputy Prosecutor Christopher T. Mahre appeals from a summary order of contempt. The trial court sanctioned him for asking a criminal defendant a question that, according to the trial judge, was "irrelevant, scandalous, and inflammatory." Because a trial court may impose a summary contempt sanction pursuant to RCW 7.21.050 only for conduct constituting contempt under RCW 7.21.010, such as violating a court order or behaving in a disorderly, contemptuous, or insolent manner that tends to disrupt or interrupt the proceedings so severely as to warrant immediate sanction, and because Mahre's conduct did not fit within any of those categories, it was an abuse of discretion to impose the summary order of contempt. Accordingly, we reverse.

## FACTS

This controversy arose during the trial testimony of a

criminal defendant charged with multiple counts of assault and one count of false imprisonment. Upon direct examination, the defendant claimed that he had tried to help the victim overcome a drinking problem and characterized himself as "kind of a health nut." During cross-examination, Mahre asked:

Q: Basically, you're a health nut, other than drinking a few drinks now and then?

A: I don't know that I'm a health nut. I'm pretty well into my health. I do a lot of vitamins and nutrients and minerals and things.

Q: Didn't you say—didn't you use the phrase "health nut" during your attorney's questions?

A: Some people call it a health nut, yes.

Q: Well, isn't it true you had your bond revoked because you used marijuana during the pendency of this case, and were put back in jail?

Report of Proceedings at 14. Defense counsel objected to the last question and asked for a curative instruction. Mahre replied, "He opened the door, Your Honor."

After removing the jury, the trial court demanded of Mahre, "Give me one rational theory under which that question is admissible." Without citing a specific case or evidence rule, Mahre argued that impeachment testimony is permissible when a party opens the door to a particular subject.[1]

In response, the trial court stated: "I find the question is outrageous. I find it contemptuous. I'm going to fine you $200 for asking the question because there is no authority for it. I'm going to instruct the jury to disregard it." The court then brought the jury back, instructed it to disregard the question, and resumed trial.

After trial, the court denied Mahre's motion to dismiss

---

[1]We do not consider whether this question was proper or improper. We limit our consideration to whether, if the question were improper, it was remediable by summary contempt.

the sanction.[2] The trial court did not enter findings of fact and conclusions of law. Mahre than appealed to this court.

Before Mahre filed his appellate brief, the trial judge, representing the Cowlitz County Superior Court and using his state bar number, moved to remand the matter to the trial court for entry of findings of fact and conclusions of law. A commissioner of this court denied the motion "without prejudice."

The judge, again using his bar number, moved to modify the commissioner's ruling. A panel of judges of this court issued an order requesting briefing on the issue of the judge's authority to file motions on the trial court's behalf. When the judge failed to submit any authority, this court denied the motion to modify without prejudice.

Shortly thereafter, the judge appointed a private lawyer "special counsel to appear on behalf of the superior court" in this matter. At that point, the judge had already written part of the trial court's appellate brief.

On the same date that he filed the trial court's appellate brief, the judge, acting through counsel, moved again to remand to the superior court to complete the record, which motion another commissioner of this court granted. Contemporaneously, the judge sent to Mahre proposed findings of fact and conclusion of law, drafted by himself and counsel.

On remand, Mahre asked the judge to disqualify himself under the appearance of fairness doctrine. Mahre complained that the judge had collaborated with the trial court's counsel in preparation of the appellate brief and proposed findings of fact and conclusions of law.

The judge conceded that he had written a "substantial" part of the brief and proposed findings prior to retaining counsel. But the judge declined to disqualify himself and continued with argument on the proposed findings.

The trial court subsequently issued findings of fact and

[2]The jury acquitted the defendant of false imprisonment but deadlocked on the other counts.

conclusions of law, drafted by the judge and his counsel, which included supplemental findings drafted by Mahre. Among other things, the conclusions of law stated that "[t]he unwarranted introduction of irrelevant, scandalous and inflammatory material into a jury trial is contemptuous conduct by a lawyer."

Mahre appeals, arguing that his actions were not contemptuous as a matter of law. He also challenges the findings of fact and conclusions of law under the appearance of fairness doctrine.

## DISCUSSION
### I. Contempt

Historically, Washington courts have imposed summary contempt sanctions for particularly contumacious behavior. *See State v. Hobble*, 126 Wn.2d 283, 294, 892 P.2d 85 (1995); *In re Contempt Proceedings of Salvesen*, 78 Wn.2d 41, 46, 469 P.2d 898 (1970); *State v. Caffrey*, 70 Wn.2d 120, 122-23, 422 P.2d 307 (1966); *State v. Zioncheck*, 171 Wash. 388, 392-93, 18 P.2d 35, 23 P.2d 1118 (1933); *In re Contempt of Court of Willis*, 94 Wash. 180, 183-84, 162 P. 38 (1917); *State v. Buddress*, 63 Wash. 26, 30, 114 P. 879 (1911); *Hedican v. Pennsylvania Fire Ins. Co.*, 21 Wash. 488, 490, 58 P. 574 (1899). Here, the trial court imposed the order of contempt under RCW 7.21.050, which gives the court authority to summarily impose a sanction for a "direct contempt"—one committed in the courtroom. *Hobble*, 126 Wn.2d at 293. A trial court may impose a summary contempt sanction "if the judge certifies that he or she saw or heard the contempt" and "only for the purpose of preserving order in the court and protecting the authority and dignity of the court." RCW 7.21.050(1);[3] *Hobble*, 126 Wn.2d at 283.

---

[3]RCW 7.21.050, enacted by LAWS OF 1989, ch. 373, § 5, states:

(1) The judge presiding in an action or proceeding may summarily impose either a remedial or punitive sanction authorized by this chapter upon a person who commits a contempt of court within the courtroom if the judge certifies that he or she saw or heard the contempt. The judge shall impose the sanctions immediately after the contempt of court or at the end of the proceed-

██ ██ Punishment for contempt of court lies within the sound discretion of the trial court; a reviewing court will not disturb a trial court's contempt ruling absent an abuse of that discretion. *Schuster v. Schuster*, 90 Wn.2d 626, 630, 585 P.2d 130 (1978); *In re Marriage of Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995); *Caffrey*, 70 Wn.2d at 122-23. A trial court abuses its discretion when it exercises it in a manifestly unreasonable manner or bases it upon untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

RCW 7.21.010 defines the acts constituting contempt.[4] The statute does not include asking a question for which there is no legal basis. Nor does it include "[t]he unwarranted introduction of irrelevant, scandalous and inflammatory material into a jury trial."

The trial court stated in its findings of fact that Mahre had not violated a court order. RCW 7.21.010(1)(b). Consequently, the only category of contempt that might apply to Mahre's conduct is intentional "[d]isorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to impair its authority, or to

ing and only for the purpose of preserving order in the court and protecting the authority and dignity of the court. The person committing the contempt of court shall be given an opportunity to speak in mitigation of the contempt unless compelling circumstances demand otherwise. The order of contempt shall recite the facts, state the sanctions imposed, and be signed by the judge and entered on the record.

[4]RCW 7.21.010 states in relevant part:

The definitions in this section apply throughout this chapter:

(1) "Contempt of court" means intentional:

(a) Disorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to impair its authority, or to interrupt the due course of a trial or other judicial proceedings;

(b) Disobedience of any lawful judgment, decree, order, or process of the court;

(c) Refusal as a witness to appear, be sworn, or, without lawful authority, to answer a question; or

(d) Refusal, without lawful authority, to produce a record, document, or other object.

interrupt the due course of a trial or other judicial proceedings." RCW 7.21.010(1)(a). Under this definition, the contemptor must (1) act with intent, (2) in a manner that is disorderly, contemptuous, or insolent toward the judge while holding court, and (3) with the effect that it tends to impair the trial court's authority or interrupt its proceedings. RCW 7.21.010(1)(a). Mahre's conduct did not fall within that definition.

Mahre certainly intended to ask the offending question, so the intent element is not at issue. But Mahre did not act in a manner that was disorderly, contemptuous, or insolent toward the court.

Although we find no bright-line rule defining disorderly, contemptuous, or insolent behavior, the case law describes particularly egregious conduct. *See Salvesen*, 78 Wn.2d at 46 (a witness' act of defiance before the court); *Caffrey*, 70 Wn.2d at 122 (a disrespectful "Shakespearean aside" spoken within earshot of the judge); *Zioncheck*, 171 Wash. at 392-93 (attorney calling witness "a scab" in an insulting manner); *Willis*, 94 Wash. at 183-84 (interrupting the proceedings in an "insolent manner" while circulating and displaying within the courtroom a pamphlet critical of the court); *Buddress*, 63 Wash. at 30 (using "boisterous and angry" language and gestures and engaging in a fight in the presence of the court); *Hedican*, 21 Wash. at 490 (juror's intoxication during trial).[5] Further, the offending conduct must not only be disorderly, contemptuous, or insolent toward the court, it must also tend to impair the court's authority or interrupt its proceedings. RCW 7.21-.010(1)(a).

In *Buddress*, the donnybrook between the offending parties forced the trial court to temporarily suspend its "business." 63 Wash. at 31. In *Hedican*, the juror's intoxication

---

[5]In contrast, an order of contempt would not lie where an attorney refused to apologize when ordered to do so by the court, *State ex rel. Martin v. Pendergast*, 39 Wash. 132, 136-37, 81 P. 324 (1905) (attorney is never obligated to apologize to the court), or where a witness gave testimony that the court believed was false yet had no judicial knowledge of the falsity, *State v. Estill*, 55 Wn.2d 576, 578, 349 P.2d 210, 89 A.L.R.2d 1251 (1960).

resulted in a new trial. 21 Wash. at 490. In *Willis*, the offending behavior forced the bench to deviate from its regular docket. 94 Wash. at 181. These acts were so disruptive that the trial court "would have been both lacking in dignity and recreant to its duty if it had not visited summary punishment upon" the offenders. *Buddress*, 63 Wash. at 30.[6]

█ Washington's approach to summary contempt is consistent with federal practice. Summary contempt is appropriate where the offending behavior disrupts court proceedings and requires immediate judicial action to preserve order and protect the institution of the court. *See Pounders v. Watson*, 521 U.S. 982, 117 S. Ct. 2359, 2362-63, 138 L. Ed. 2d 976 (1997); *United States v. Wilson*, 421 U.S. 309, 316, 95 S. Ct. 1802, 44 L. Ed. 2d 186 (1975); *Harris v. United States*, 382 U.S. 162, 167, 86 S. Ct. 352, 15 L. Ed. 2d 240 (1965).

In *Pounders*, an attorney asked a question on a prohibited subject despite a number of admonitions from the bench. 521 U.S. 984. This elicited a warning from the trial court. *Id*. The attorney then immediately followed up with yet another question on the prohibited topic. *Id*. at 985. After a brief colloquy, the court summarily found the attorney in contempt. *Id*. In finding the attorney's conduct sanctionable, the *Pounders* Court reasoned that counsel's knowing violation of a clear and specific court order fell "well within the range of contumacious conduct disruptive of judicial proceedings and damaging to the court's authority." 521 U.S. at 991.

---

[6]On the other hand, there was little disruption in *Zioncheck*, but both the trial court and Supreme Court clearly were appalled by counsel's use of a term "of contempt and reproach" directly against a witness. 171 Wash. at 392-93. Thus, the Supreme Court found the act contemptuous even though the trial court had issued no prior warnings as to the offending term; counsel is presumed to know "not to use improper language in addressing either the court, opposing counsel or a witness." *Id*. at 393. The *Zioncheck* court also noted that counsel used the objectionable term "in a manner insulting to the witness." *Id*. at 394. Here, *Zioncheck* is not controlling; Mahre used no pejoratives and his manner was respectful at all times.

Here, there was no order prohibiting Mahre from asking the question at issue; Mahre "at all times was respectful in demeanor to the Court"; the offending question was factually accurate; and the only disruption in the courtroom was the trial court's interruption to address the issue. This interruption was fleeting; the matter was discussed outside the presence of the jury; the offending question did not even elicit a motion for mistrial; and, as requested by the defendant, the trial court issued a curative instruction.

Based upon the above authorities, we hold that even assuming, without deciding, that Mahre's question was improper and warranted an admonition, asking the question under these circumstances did not constitute "contempt" as that word is defined under RCW 7.21.010(1)(a).

## II. Appearance of Fairness

Mahre also argues that the trial court's personal involvement in this matter violated the appearance of fairness. Because of the troublesome nature of the record and the potential for damage to trial counsel's reputation, we address this claim.

"The appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of bias or prejudice." *State v. Madry*, 8 Wn. App. 61, 70, 504 P.2d 1156 (1972); *Brister v. Tacoma City Council*, 27 Wn. App. 474, 486, 619 P.2d 982 (1980). "The critical concern in determining whether a proceeding appears to be fair is how it would appear to a reasonably prudent and disinterested person." *Brister*, 27 Wn. App. at 486-87 (citing *Chicago, Milwaukee, St. Paul & Pac. R.R. v. Human Rights Comm'n*, 87 Wn.2d 802, 557 P.2d 307 (1976)). To prevail under the appearance of fairness doctrine, the claimant must provide some evidence of the judge's or decision-maker's actual or potential bias. *State v. Post*, 118 Wn.2d 596, 619 n.9, 826 P.2d 172, 837 P.2d 599 (1992).

The judge here twice made motions to this court on

behalf of the Cowlitz County Superior Court. In his attempts to represent a client, the court, he used his state bar number. This was improper. The Washington Constitution bars an active judge from practicing law in any court of the state. CONST. art. IV, § 19. The State Bar Act contains the same prohibition. RCW 2.48.200.[7]

In addition, the judge acted as an advocate, writing "substantial" parts of the appellate brief before issuing findings of fact and conclusions of law. The precise way in which parts of the findings of fact and the judge's appellate brief track each other suggests that the findings were written to support the brief.[8] And the conclusions of law and the brief mirror each other in their adversarial tone.

This "most distressing" conduct crosses the line that separates an impartial tribunal from a zealous advocate. *Brister*, 27 Wn. App. at 487; *Madry*, 8 Wn. App. at 70. But because we reverse the contempt order on other grounds, the issue of the judge's recusal is no longer at issue and we cannot provide any further relief regarding this claim.

We reverse and dismiss the order of contempt.

ARMSTRONG, A.C.J., and HOUGHTON, J., concur.

Reconsideration denied August 3, 1999.

---

[7]A judge entangled in litigation can request representation from the Attorney General. RCW 4.92.030, .070; *see, e.g., Shutt v. Moore*, 26 Wn. App. 450, 452, 613 P.2d 1188 (1980) (judge named defendant).

[8]For example, findings of fact 5 and 6 are nearly identical to pages 3 and 4 of the judge's opening brief. We find nothing improper, however, in the judge's preparing his own findings of fact and conclusions of law.