IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38562-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RODNEY FRANCIS BRYSON, | ) | UNPUBLISHED OPINION |
| AKA RODNEY JAMES BRYSON, | ) | |
| AKA RODNEY FRANCIS TURPIN, | ) | |
| | ) | |
| Appellant. | ) | |

HUBER, J.* — Rodney Bryson appeals his conviction for third degree assault,

arguing ineffective assistance of counsel. He also appeals two orders of contempt issued

against him during court hearings, as well as the portion of his sentence requiring him to

pay community custody fees. Lastly, Bryson requests resentencing because his offender

score included a drug conviction under a statute later ruled unconstitutional by *State v.*

*Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

We reverse two contempt citations, remand for resentencing in light of *Blake*, and

otherwise affirm.

---

\* Judge Brian C. Huber is serving as judge pro tempore of the Court of Appeals
pursuant to RCW 2.06.150.

FACTS

Rodney Bryson was arrested and charged with third degree assault. On August 21, 2019, the trial court initially set Bryson's bond at $50,000 due to his significant charge history and five pages of warrants. The bond was later reduced to $25,000. On September 3, 2019, Bryson filed an affidavit of prejudice disqualifying Judge David Edwards. The next day at arraignment, he pleaded not guilty and asked for release which was denied.

On September 30, 2019, defense counsel moved for a ch. 10.77 RCW competency evaluation and the court agreed and ordered the evaluation to take place with his counsel present. The court excluded the examination period from the speedy trial calculation pursuant to CrR 3.3. On October 4 and 14, the Department of Social and Health Services (DSHS) requested extensions to complete Bryson's evaluation because defense counsel had not been available to attend the evaluation. Another agreed extension occurred October 21 to allow the court and parties to review the report. On October 30, defense counsel sought a second independent competency evaluation.

The defense expert interviewed Bryson on November 19. The parties agreed to two more extensions on November 8 and 25 to receive and review the secondary evaluation. Bryson did not object. Both the DSHS evaluation and the independent evaluation found Bryson competent. The trial court found Bryson competent on November 27 at which time the court also entered a new scheduling order setting the

expiration of speedy trial for December 26, 2019 (thirty days later) pursuant to CrR 3.3. Trial was set for December 17, 2019.

On December 2, 2019, defense counsel drew the court's attention to ongoing communication problems with Bryson and confirmed on the record that discovery had been received and shared with Bryson. At the next hearing on December 6, the court granted defense counsel's motion to withdraw which caused the 60-day speedy trial clock to be reset to zero and new counsel to be appointed.

Bryson's new attorney first appeared with Bryson on December 9 at a status conference before Judge Edwards (who had previously been disqualified). A few weeks later, on December 30, 2019, Bryson appeared before Judge Edwards again. The exchange between the attorneys and the court was as follows:

> [THE STATE]: Your Honor has been affidavited on this matter. But I think what we have is an agreed upon omnibus order, which I don't think will require any discretionary rulings. There are no statements that are going to be intended to be offered and it sets the deadline for discovery to be exchanged on January 10th, which is the Friday before pretrial.
> THE COURT: The trial is currently scheduled for February 4; is that correct?
> [DEFENSE COUNSEL]: Yes, Your Honor.
> THE COURT: Okay.
> [THE STATE]: Yes.
> THE COURT: All right.
> [DEFENSE COUNSEL]: I will hand forward the agreed upon omnibus order.
> THE COURT: All right. Mr. Bryson, good afternoon. Your trial is scheduled to begin on February 4. You will be back in court again two weeks from today, at which time you and your attorney will be asked if—if

a trial in your case is necessary and, if so, whether everyone is ready to proceed to trial as scheduled on February 4.

[MR. BRYSON]: Okay. I'm asking to be PR'd on medical conditions. I've been—

THE COURT: Mr. Bryson, I have been—Mr. Bryson, I have been disqualified by you, so I cannot make any—

[MR. BRYSON]: What am I doing in front of you—

THE COURT: I cannot make any discretionary rulings, that's all.

[MR. BRYSON]: I need a copy of discovery.

THE COURT: Mr. Bryson, that's all.

[MR. BRYSON]: I'm not talking to you. I'm not talking to—

THE COURT: You are now in contempt of court and that last remark just cost you 30 days in jail.

[MR. BRYSON]: I'm tired of this shit. I've been here for five months. I have a right to a speedy trial.

THE COURT: Prepare a contempt order. He's doing 30 days of dead time starting right now.

[THE STATE]: All right.

[MR. BRYSON]: He wants to talk to me like a human being, I'll talk to him. If he wants to be a smart ass, I can be a smart ass.

THE COURT: All right. There's another 30. Now you're doing 60 days of dead time.

[MR. BRYSON]: We'll see what the bar has to say to you about it.

Report of Proceedings (RP) (Prante) at 19-21. Judge Edwards's contempt order references the assault charge case number and reads:

**FINDINGS**

On December 30, 2019, the Defendant appeared before the Hon. David Edwards, undersigned, and made repeated verbal and outbursts during his docket appearance. The Defendant was advised to behave and did not. He ordered the Court to be quiet. He was then held in contempt. As he was being wheeled away from the bar, began his verbal outbursts anew. He was held in contempt a second time. The behavior was contemptuous toward the judge and the administration of justice.

**ORDER**

IT IS HEREBY ORDERED, under the authority of RCW 7.21, that Mr. Rodney Bryson is twice in contempt of this court and shall be jailed for

two 30-day periods, for a total of 60 days, consecutive to any other holds, sentences, or any other orders of contempt.
This time shall not be credited toward confinement on any cause, or to any future sentences.

Clerk's Papers (CP) at 415. At the following pretrial hearing on January 13, 2020, both parties confirmed the trial date before Judge David Mistachkin. Mr. Bryson requested release stating "I've had three mental health evaluations, all three of them came back negative and that's what we were waiting on. I extended and gave them the benefit of a doubt, which would be a 14-day extension past the 60 days, but asked for the evaluation before my 60 days were up. I gave them 74. I've been here in here 147 days." RP (Prante) at 23.

Trial began February 4, 2020. A jury found Mr. Bryson guilty of third degree assault. Mr. Bryson refused to sign court documents stating "I'm not signing that. This is a kangaroo court." RP (Johnston) at 123. He was removed from court, and brought back ten days later for sentencing. Mr. Bryson again refused to sign the judgment and sentence, and refused to be fingerprinted. Judge Mistachkin held him in contempt and ordered a ten-day sanction. Completion of sentencing was continued another week. Again Mr. Bryson refused to sign the judgment and sentence, or provide fingerprints. The court ordered that his fingerprints be taken forcibly and entered the judgment and sentence.

Based on the criminal history provided by the State, which included 1 point for a drug conviction from 2009, Mr. Bryson's offender score was 6 indicating a standard range of 22 to 29 months. He was sentenced to 24 months' confinement and 12 months' community custody. He was found indigent. The court made no comments on the record regarding costs or fees. Restitution to the officer was reserved. The judgment indicates: "While on community custody, the Defendant shall . . . (7) pay supervision fees as determined by DOC[1]." CP at 335. The court checked the judgment box indicating that "The Department of Corrections (DOC) or clerk of the court shall immediately issue a Notice of Payroll Deduction." CP at 337. The court also checked the box indicating "[a]ll payments shall be made in accordance with the policies of the clerk of the court and on a schedule established by DOC[.]" CP at 337. Mr. Bryson filed a timely notice of appeal.

## ANALYSIS

*Contempt Orders*

Mr. Bryson assigns error to Judge Edwards's orders holding him in contempt. "'Punishment for contempt of court lies within the sound discretion of the trial court'" and is reviewed for abuse of discretion. *State v. Dennington*, 12 Wn. App. 2d 845, 850-51, 460 P.3d 643 (2020) (quoting *State v. Dugan*, 96 Wn. App. 346, 351, 979 P.2d 885

---

[1] Department of Corrections.

(1999)); (citing *Templeton v. Hurtado*, 92 Wn. App. 847, 852, 965 P.2d 1131 (1998)).

Discretion is abused when it is exercised in an unreasonable manner or based on untenable grounds. *Dennington*, 12 Wn. App. 2d at 851 (citing *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

Chapter 7.21 RCW sets forth the statutory authority of Washington courts to address contempt of court that occurs both within (direct) and without (indirect) the court's presence. *Dennington*, 12 Wn. App. 2d at 852. In the case of direct contempt either remedial or punitive sanctions may be summarily ordered for behavior in the presence of the court. RCW 7.21.050(1); *Dennington*, 12 Wn. App. 2d at 852 (citing *State v. Hobble*, 126 Wn.2d 283, 293, 892 P.2d 85 (1995)). Here, the court relied on statutory contempt authority and directly imposed punitive contempt sanctions to immediately punish Mr. Bryson's courtroom behavior. *Hobble*, 126 Wn.2d at 292-93. When contempt occurs in the direct presence of the court, summary proceedings are appropriate and the facts are not subject to dispute because the judge has personal knowledge of the conduct occurring in his presence. *Id.* at 297.

> "Contempt of court" is defined as intentional:
> (a) Disorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to impair its authority, or to interrupt the due course of a trial or other judicial proceedings;
> (b) Disobedience of any lawful judgment, decree, order, or process of the court;
> (c) Refusal as a witness to appear, be sworn, or, without lawful authority, to answer a question; or

7

(d) Refusal, without lawful authority, to produce a record, document, or other object.

RCW 7.21.010(1). "Under this definition, the contemptor must (1) act with intent, (2) in a manner that is disorderly, contemptuous, or insolent toward the judge while holding court, and (3) with the effect that it tends to impair the trial court's authority or interrupt its proceedings." *Dugan*, 96 Wn. App. at 351 (citing RCW 7.21.010(1)(a)).

In *Dennington*, the defendant told the prosecutor that she needed to lose weight and when cautioned by the court, the defendant said "I don't respect the liars that you entertain in your court . . . do something about it. I don't care about that." *Dennington*, 12 Wn. App. 2d at 849. He then walked away. *Id*. at n.2. The reviewing court found that his comments and actions delayed the other 108 matters pending on the docket and could have encouraged others to engage in similar disrespect, thus the requirements of the contempt statute were met. *Id*. at 855-56.

In *Templeton v. Hurtado*, a defendant was held in contempt of court for refusal to sign a no contact order. 92 Wn. App. at 852-54. While the defendant's behavior in the record was found to meet contempt requirements, the trial court was reversed due to its failure to issue written factual findings or allow for mitigation resulting in remand to comply with these statutory requirements. *Id*.

Bryson engaged in direct contempt of court. The record supports the trial court's findings that Bryson's comments were disorderly. The record does not reflect how many

other cases were on the docket or whether anyone other than the attorneys were in the room on that day. The court did not make any findings that Bryson's disorderly conduct tended to impair the court's authority or to interrupt the due course of a trial or other judicial proceeding. Such findings are necessary to support an order of contempt under RCW 7.21.050(1). The court abused its discretion by imposing the two contempt orders.

Having reversed Judge Edwards's contempt orders for this reason, it is unnecessary to reach the other grounds on which Bryson challenges the order (an alleged failure to allow Bryson to speak in mitigation and Judge Edwards's disqualified status).

*Ineffective Assistance of Counsel*

Bryson argues his defense attorney was ineffective by failing to move for dismissal pursuant to CrR 8.3 when the State violated Bryson's substantive due process rights by detaining him for 58 days in jail while waiting for a competency evaluation. He argues that failure by DSHS to evaluate Bryson within 14 days amounted to governmental misconduct under CrR 8.3.

The State responds that defense counsel was effective because a CrR 8.3(b) dismissal motion is not the proper remedy for a competency due process violation. The State contends a motion to dismiss would have failed because the 14-day timeframe does not apply to third party hospitals and is merely a guideline and not an entitlement. The State also argues that dismissal is an unwarranted extreme remedy in this case. Finally, the State asserts that Bryson failed to establish prejudice as required under CrR 8.3(b).

9

Both the United States and Washington State Constitutions guarantee a criminal defendant the right to effective assistance of counsel. *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018); *see also* U.S. Const. amend. VI; Wash. Const. art. I, § 22. Claims of ineffective assistance of counsel are reviewed *de novo*. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). Under *Strickland v. Washington*,[2] Mr. Bryson bears the burden of showing that based on the record (1) his counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, (2) there is a reasonable probability that but for counsel's poor performance the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). There is a strong presumption that counsel's performance was reasonable. *Id*.

"[T]he defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *McFarland*, 127 Wn.2d at 336. In order to show prejudice by counsel's failure to make a motion, a defendant must show the trial court likely would have granted the motion if made. *Id*. at 333-34. Despite a duty to research all reasonable lines of defense, counsel has no duty to pursue strategies that reasonably appear unlikely to succeed. *State v. Brown*, 159 Wn. App. 366,

---

[2] 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

10

371, 245 P.3d 776 (2011) (citing *McFarland*, 127 Wn.2d at 334 n.2). The reasonableness

of counsel's performance is to be evaluated from counsel's perspective at the time of the

alleged error and in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S.

365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).

A trial court may dismiss charges pursuant to a CrR 8.3(b) motion if the defendant

shows by a preponderance of the evidence that "'(1) arbitrary action or governmental

misconduct, and (2) prejudice affecting the defendant's right to a fair trial.'" *State v.

Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (18-month delay in filing charge not

prejudicial). Mismanagement is sufficient to establish misconduct. *State v. Blackwell*,

120 Wn.2d 822, 831, 845 P.2d 1017 (1993). However, the defendant must show actual

prejudice and not merely speculate as to the effect on his right to a fair trial. *Rohrich*,

149 Wn.2d at 657. Dismissal of charges under CrR 8.3(b) is an extraordinary remedy.

*Id*. at 658. It should only be utilized as a last resort. *State v. Wilson*, 149 Wn.2d 1, 9, 65

P.3d 657 (2003) (State's inability to secure witnesses for defense interview did not

warrant dismissal).

Detained defendants shall be brought to trial within 60 days subject to several

exceptions. CrR 3.3(b). One such exception is set forth in CrR 3.3(e) which provides

that when computing the time for trial, the following time shall be excluded:

> All proceedings relating to the competency of a defendant to stand trial on
> the pending charge, beginning on the date when the competency

examination is ordered and terminating when the court enters a written
order finding the defendant to be competent.

RCW 10.77.050 provides that "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." If there is a reason to doubt a defendant's competency, the trial court shall appoint an expert to evaluate the mental condition of the defendant. RCW 10.77.060(1). The expert conducting the evaluation shall provide his report to the trial court. RCW 10.77.065. After acknowledging that evaluation "targets may not be achievable in all cases," RCW 10.77.068 recommends that competency evaluations should be completed within 14 days from the date of the referral. RCW 10.77.068(1)(a)(i)(A), (B). However, an expert can refute a claim of exceeding this evaluation period where, as occurred here, efforts have been frustrated by the availability of defense counsel. RCW 10.77.068(1)(c)(iii). Any failure of an expert to comply with the 14-day evaluation period does not create any entitlement and cannot form the basis for dismissal of a criminal charge. RCW 10.77.068(5).

It is unnecessary to reach the issue of whether DSHS is a government actor where no misconduct took place and no prejudice has been established. The moment the trial court ordered Bryson's competency evaluation (which he does not challenge), the speedy trial clock stopped pursuant to CrR 3.3(b). The time calculation only restarts when the trial court finds the defendant competent. The procedural rule does not provide any

12

exception for lengthy evaluation times and does not reference ch. 10.77 RCW guidelines.

RCW 10.77.068(5) explicitly indicates legislative intent that a violation of the 14-day

evaluation guidelines may not form the basis of a criminal dismissal. Regardless, the

delays as to Bryson's first evaluation can be attributed to the unavailability of defense

counsel. The competency hearing delay occurred because defense counsel made the

strategic decision, in furtherance of competency dismissal, to seek a secondary evaluation

to challenge DSHS's evaluation result. The record indicates Bryson agreed to this

strategy (despite his multiple letters sent to the court). *State v. Henderson*, 114 Wn.2d

867, 870, 792 P.2d 514 (1990) (invited error).

The *Trueblood*[3] cases cited by Bryson provide no support for his ineffective

assistance of counsel claim for reasons addressed by this court and the Supreme Court in

*State v. Hand*, 199 Wn. App. 887, 401 P.3d 367 (2017). In *Hand*, Mr. Hand was

admitted for mental health competency restoration treatment after his timely evaluation

pursuant to RCW 10.77.060 and the hospital delayed his treatment 61 days. The court of

appeals affirmed the trial court's denial of Mr. Hand's CrR 8.3(b) motion for dismissal on

two bases. First, Mr. Hand failed to establish prejudice to his trial right. *Id*. at 899.

---

[3] *Trueblood v. Wash. State Dep't of Soc. & Health Servs.*, 822 F.3d 1037 (9th Cir. 2016) (*Trueblood* III); *Trueblood v. Wash. State Dep 't of Social & Health Servs.*, 73 F. Supp. 3d 1311 (W.D. Wash. 2014) (*Trueblood* I).

Second, the court found that hospital delays resulting from a lack of available beds was not misconduct requiring due process dismissal. *Id*. at 900. The court of appeals did not address the State's argument that the hospital was not a government actor. *Id*. at 899. Much like here, Mr. Hand relied on the *Trueblood* cases to support his argument of outrageous conduct by Western State Hospital without citing to any other authority to support the violation of due process. *Id*. at 900. The court of appeals distinguished the *Trueblood* cases as civil suits for injunction to resolve a delay in receiving mental health services and found that those cases did not support dismissal in a criminal proceeding. *Id*. at 900. After discussing the *Trueblood* cases in depth, the Supreme Court affirmed the Court of Appeals on the basis that a 14th Amendment substantive due process violation by DSHS, for failure to provide timely restoration treatment, does not warrant dismissal of criminal charges. *State v. Hand*, 192 Wn.2d 289, 297-98, 301-02, 429 P.3d 502 (2018).[4]

The *Hand* case is distinguishable from Bryson's situation because it involved delayed treatment for incompetent persons. And unlike in *Hand*, Bryson's delayed initial evaluation and competency determination were caused by defense counsel and not the

---

[4] The court in *State v. Clark* reached the same result for the same reasons as the court of appeals in *Hand*. No. 76027-1-I, (Wash. Ct. App. Jan. 17, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/760271.pdf (competency evaluation delayed 96 days).

14

State. Nonetheless, the rationale distinguishing application of the *Trueblood* cases is the same. Nothing in the record here establishes prejudice warranting dismissal.

Defense counsel cannot be deemed ineffective for failing to make a State misconduct dismissal motion when the complained of delays occurred due to defense counsel. The trial court would not have granted a State misconduct dismissal, and no prejudice has been shown. Bryson fails to overcome the presumption that defense counsel's performance was reasonable.

*Community Custody Fees*

Bryson asks that the community custody supervision fee be struck from the judgment and sentence because he is indigent and the court did not intend to impose it despite its presence on the standard form. The State answers that the community custody supervision fee is not subject to an inquiry into the defendant's ability to pay, and the court in its exercise of discretion intended to impose it.

RCW 9.94A.703(2)(d) provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [DOC]." "Community custody supervision fees are discretionary LFOs [legal financial obligations] because they are waivable by the court." *State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020). However, they are not subject to indigency analysis. *Id*. at 537.

A scrivener's error is one that, when amended, would correctly convey the intention of the trial court as expressed in the record at trial. *State v. Davis*, 160 Wn. App. 471, 478, 248 P.3d 121 (2011). The remedy for a scrivener's error in a judgment and sentence is to remand to the trial court for correction. *State v. Makekau*, 194 Wn. App. 407, 421, 378 P.3d 577 (2016).

To determine the court's intent, a sentencing court's oral comments are not considered because those statements are not part of the final judgment unless reduced to a written order, here the judgment and sentence. *State v. Starr*, 16 Wn. App. 2d 106, 110, 479 P.3d 1209 (2021).[5] However, consideration of trial court oral comments regularly occurs as exemplified in *State v. Dillon*, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020). There, Mr. Dillon was indigent. *Id*. The trial court stated it would waive the filing fee and "'simply order $500 victim penalty assessment, which is still truly mandatory, as well as restitution, if any.'" *Id*. The reviewing court struck the community custody supervision fee, finding that the trial court intended to only impose mandatory LFOs even though there was no specific mention of supervision fees because the supervision fee paragraph on the judgment and sentence is "buried." *Id.*

---

[5] Citing *State v. Huckins*, 5 Wn. App. 2d 457, 469-70, 426 P.3d 797 (2018) (citing *State v. Dailey*, 93 Wn.2d 454, 458, 610 P.2d 357 (1980)).

Bryson was determined to be indigent, but that is irrelevant to this determination. Instead, the trial court's intent to impose the community custody supervision fee is this court's focus. The present case is distinguishable from *Dillon*, in that nothing in the record here indicates any intent by the trial court to waive non-mandatory fees. Bryson's conclusion as to the trial court's intent is simply speculative. He fails to support his position with citation to the record. In contrast, the court reserved non-mandatory restitution and checked boxes on the judgment and sentence indicating payment methods through the Department of Corrections. These written expressions support the trial court's intention to impose the fees despite the "boilerplate" nature of the fee language in the judgment and sentence form.

*Resentencing in Light of* Blake

Bryson's offender score of 6 included one point for a 2009 drug possession conviction that must be excluded under *Blake*. For an offender score of 6 points, Mr. Bryson's sentence range was 22 to 29 months. He received 24 months' incarceration. A revised offender score of 5 results in a new range of 15 to 20 months. The State concedes that the 2009 drug conviction is void and that Mr. Bryson's offender score must be recalculated without it. Remand for resentencing is appropriate.

No. 38562-1-III
*State v. Bryson*

CONCLUSION

For these reasons, we reverse Judge Edwards's contempt orders, remand for resentencing pursuant to *Blake*, and otherwise affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Huber, J.P.T.

WE CONCUR:

_____
Fearing, J.

_____
Siddoway, C.J.

18